[No. S061240. Feb. 8, 1999.]

JAMES T. LEWIS, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
CHESTER GREEN et al., Real Parties in Interest.

### COUNSEL

Howard, Moss, Loveder, Strickroth & Walker, Margaret M. Parker, James E. Loveder and Daniel G. Pezold for Petitioner.

No appearance for Respondent.

McIntire Law Corporation, Christopher D. McIntire and Michael V. McIntire for Real Parties in Interest.

Michael P. Fudge, Public Defender, and John Hamilton Scott, Deputy Public Defender, for Los Angeles County as Amicus Curiae on behalf of Real Parties in Interest.

Jay-Allen Eisen; Barry R. Levy; Michael M. Berger; Peter W. Davis; Rex S. Heinke; Wendy C. Lascher; and Gerald Z. Marer for the California Academy of Appellate Lawyers as Amicus Curiae on behalf of Real Parties in Interest.

### OPINION

**GEORGE, C. J.**—When an appellate court considers a petition for a writ of mandate or prohibition, it is authorized in limited circumstances to issue a peremptory writ in the first instance, without having issued an alternative writ or order to show cause. (Code Civ. Proc., §§ 1088, 1105; *Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1222-1223 [23 Cal.Rptr.2d 397, 859 P.2d 96] (*Alexander*); *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 [203 Cal.Rptr. 626, 681 P.2d 893] (*Palma*).) In *Palma*, we held that even in such circumstances, a peremptory writ of mandate or prohibition should not issue in the first instance unless the adverse parties have received notice that such a writ in the first instance is being sought or considered. In addition, absent exceptional circumstances requiring immediate action, the court should not issue a peremptory writ in the first instance without having received, or solicited, opposition from the party or parties adversely affected. (*Palma*, *supra*, 36 Cal.3d at p. 180.) In this case we decide whether, in those limited situations where the accelerated *Palma* procedure is appropriate, a court must provide an opportunity for oral argument before issuing a peremptory writ in the first instance.

As we shall explain, the statutes and rules governing peremptory writs of mandate and prohibition do not require an appellate court to afford the parties an opportunity for oral argument before the court issues such a writ in the first instance, and in the past this court and the Courts of Appeal have

issued peremptory writs in the first instance without holding oral argument. Moreover, the reasoning underlying our decisions conferring a right to oral argument *on appeal* does not apply with equal force in the narrow circumstances in which a court appropriately may decide a cause by issuing a peremptory writ of mandate or prohibition in the first instance, and we decline to extend those decisions to such proceedings. Accordingly, we conclude that in the limited situations in which an appellate court may issue a peremptory writ of mandate or prohibition in the first instance, the court may do so without affording the parties an opportunity for oral argument. Our holding in this regard applies only to those proceedings in which an appellate court properly issues a peremptory writ of mandate or prohibition in the first instance, and does not affect the right to oral argument on appeal or after the issuance of an alternative writ or order to show cause.

We further conclude that the Court of Appeal's opinion directing the issuance of a peremptory writ of mandate in this case satisfies the requirement that "[d]ecisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated." (Cal. Const., art. VI, § 14.)

I

Real party in interest Chester Green sustained personal injuries when the horse he was riding stumbled on a road owned by petitioner James T. Lewis. Green sued Lewis for negligence, alleging that Lewis failed to maintain the road in a safe condition, thereby causing Green to fall to the ground when his horse stepped into a rut. Chester Green's wife, real party in interest Robin Green, alleged a cause of action for loss of consortium.

Lewis moved for summary judgment on the ground the Greens' claims are barred by the recreational use immunity found in Civil Code section 846, which provides that landowners generally have no duty to keep their land safe for use by others for any recreational purpose.[1] In opposition, the Greens argued that there is a question of fact regarding whether Chester Green was using the road for a recreational purpose. They asserted that because the only means of access to their property is over Lewis's road, Green was not using that road for recreational horseback riding, but rather merely to reach his own property. The superior court denied the summary judgment motion, finding a triable issue of fact regarding whether Green

---

[1]Civil Code section 846 states in pertinent part: "An owner of any estate or any other interest in real property . . . owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose . . . . [¶] A 'recreational purpose,' as used in this section, includes such activities as . . . riding, including animal riding . . . ."

entered or was using Lewis's property for a recreational purpose at the time of the accident.

Lewis filed a petition for writ of mandate, prohibition, or other appropriate relief in the Court of Appeal. He requested that the court issue an alternative writ commanding the superior court to vacate its order denying the motion for summary judgment and to enter an order granting that motion, or to show cause before the Court of Appeal why it should not do so and why a peremptory writ should not issue. Lewis further requested that on the return of the alternative writ and a hearing on the order to show cause, the Court of Appeal issue a peremptory writ directing the superior court to grant his motion for summary judgment. Finally, Lewis asked the Court of Appeal to grant such other relief as the court deemed just and proper.

Before receiving opposition from the Greens, the Court of Appeal filed and served a document that stated in relevant part: "Good cause appearing therefor, [¶] Real party is invited to file a response to the petition for writ of mandate/ prohibition on file herein . . . . Unless good cause is shown, the court may issue a peremptory writ." Accordingly, the Greens filed an "Opposition to Petition for Writ of Mandate/Prohibition; Or Request for Alternative Writ," which contained 30 pages of points and authorities. Their opposition included a separately numbered and captioned argument explaining that the issuance of a writ of mandate in the first instance would establish law of the case and finally dispose of their claims, precluding them from raising the issue on appeal; "[y]et, in the ordinary course of appeal, the Greens would be entitled to a complete briefing schedule and oral argument." Therefore, they requested that, if the Court of Appeal intended to entertain the petition further, "an alternative writ be issued, a briefing schedule established, and the case calendared for oral argument."

Four days after the Greens filed their opposition, and without issuing an alternative writ or order to show cause, or hearing oral argument, the Court of Appeal filed a three-page written decision directing the issuance of a peremptory writ of mandate, instructing the superior court to set aside its order denying Lewis's motion for summary judgment and to enter a new order granting the motion. The decision begins with the following comments: "The court has read and considered the petition and the opposition thereto which we conclude adequately address the issues raised by the petition. We have reviewed the record and concluded that no factual dispute exists. We have determined that resolution of the matter involves the application of settled principles of law, and that issuance of an alternative writ would add nothing to the presentation already made. Accordingly, the issuance of a peremptory writ in the first instance is appropriate. (*Palma* v.

*U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 [203 Cal.Rptr. 626, 681 P.2d 893]; *Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1222-1223 [23 Cal.Rptr.2d 397, 859 P.2d 96].)" The Court of Appeal's decision does not address specifically the Greens' request for complete briefing and oral argument.

The Greens then filed a "Petition for Judicial Rehearing; Request for Oral Argument." They asserted, among other things, that the Court of Appeal's "abbreviated opinion" fails to discuss the evidence and legal authority supporting the trial court's ruling, and that it improperly weighs disputed facts. The Greens also noted the "anomalous situation" that they would have been afforded more complete consideration of their arguments through direct appeal, including full briefing and oral argument, had the superior court ruled against them and granted Lewis's motion for summary judgment. The petition for rehearing requested "the judicial consideration routinely provided by the Appeals Division of this Court . . . ." The Court of Appeal denied without comment the petition for rehearing.

The Greens petitioned for review, raising several issues regarding both the procedural and substantive questions involved in the Court of Appeal's resolution of the petition for writ of mandate. We granted the petition for review but limited briefing and oral argument to the following issues: "(1) Is there a right to oral argument prior to issuance of a peremptory writ in the first instance? (2) Does the Court of Appeal decision satisfy the requirements of article VI, section 14, of the California Constitution ('Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated.')?" In light of our order limiting the issues on review, we have no occasion to consider whether the Court of Appeal properly determined that this was an appropriate case for the issuance of a peremptory writ in the first instance, or whether the Court of Appeal correctly concluded that Lewis's motion for summary judgment should have been granted.

II

A

When an appellate court considers a petition for writ of mandate or prohibition, the court may: (1) deny the petition summarily, before or after receiving opposition; (2) issue an alternative writ or order to show cause; or (3) grant a peremptory writ in the first instance, after compliance with the procedure set forth in *Palma, supra,* 36 Cal.3d 171, 178-180. (*Kowis* v. *Howard* (1992) 3 Cal.4th 888, 893-894 [12 Cal.Rptr.2d 728, 838 P.2d 250]

*(Kowis)*; *Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1024 [269 Cal.Rptr. 720, 791 P.2d 290] *(Bay Development).*)

An alternative writ commands the party to whom it is directed (the respondent) either to do the act required to be performed, or show cause before the court why the respondent has not done so. (Code Civ. Proc., § 1087.)[2] An appellate court may issue an alternative writ ex parte, without first requesting the filing of opposition. (Cal. Rules of Court, rule 56(b);[3] see § 1107; 8 Witkin, Cal. Procedure (4th ed. 1997) Extraordinary Writs, § 181, p. 977.) "The respondent may choose to act in conformity with the prayer, in which case the petition becomes moot; otherwise, the respondent and/or the real party in interest may file a written return setting forth the factual and legal bases which justify the respondent's refusal to do so. (§ 1089; Cal. Rules of Court, rule 56[(e)].)" *(Palma, supra,* 36 Cal.3d at pp. 177-178; § 1089; rule 56(e).) In lieu of issuing an alternative writ, the court may issue an order to show cause, thus requiring the submission of further argument in support of the respondent's position. (See 8 Witkin, Cal. Procedure, *supra,* Extraordinary Writs, §§ 186, 205, pp. 981, 995; *Hagan* v. *Superior Court* (1960) 53 Cal.2d 498, 510-511 [2 Cal.Rptr. 288, 348 P.2d 896] (dis. opn. of Schauer, J.).)

■ Section 1088 authorizes the court to issue a peremptory writ in the first instance, without prior issuance of an alternative writ or order to show cause. We have emphasized, however, that this authority is limited and that the accelerated procedure authorized in section 1088 " 'is the exception; it should not become routine. . . .' " *(Alexander, supra,* 5 Cal.4th at p. 1223, quoting *Ng* v. *Superior Court* (1992) 4 Cal.4th 29, 35 [13 Cal.Rptr.2d 856, 840 P.2d 961] *(Ng).)* The statute " 'requires, at a minimum, that a peremptory writ of mandate or prohibition not issue in the first instance unless the parties adversely affected by the writ have received notice, from the petitioner or from the court, that the issuance of such a writ in the first instance is being sought or considered. In addition, an appellate court, absent exceptional circumstances, should not issue a peremptory writ in the first instance without having received, or solicited, opposition from the party or parties adversely affected[,]' . . . [and] unless 'it appears that the petition and opposing papers on file adequately address the issues raised by the petition, that no factual dispute exists, and that the additional briefing that would follow issuance of an alternative writ is unnecessary to disposition of the

[2]Further undesignated statutory references are to the Code of Civil Procedure.
[3]Rule 56(b) of the California Rules of Court states in part: "The court in its discretion (1) may allow the filing of the petition without service, and (2) may deny the petition or issue an alternative writ without first requesting the filing of opposition."
Further undesignated rule references are to the California Rules of Court.

petition.' " (*Alexander, supra,* 5 Cal.4th at pp. 1222-1223, quoting *Palma, supra,* 36 Cal.3d at pp. 178, 180.) ■ A court may issue a peremptory writ in the first instance " 'only when petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue—for example, when such entitlement is conceded or when there has been clear error under well-settled principles of law and undisputed facts—or where there is an unusual urgency requiring acceleration of the normal process. . . .' [Citation.]" (*Alexander, supra,* 5 Cal.4th at p. 1223.)

Unless the court summarily denies the petition or the respondent performs the act specified in an alternative writ, the matter becomes a "cause" that must be decided "in writing with reasons stated." (*Palma, supra,* 36 Cal.3d at p. 178 & fns. 5 and 6; Cal. Const., art. VI, § 14.) "If the court concludes that a peremptory writ of mandate should be granted, the opinion will direct that it issue. If not, the petition will be denied." (*Palma, supra,* 36 Cal.3d at p. 178.)

When an appellate court issues an alternative writ or order to show cause, the parties are given an opportunity for oral argument. (*Kowis, supra,* 3 Cal.4th at pp. 894-895.) Our opinion in *Palma* includes dictum that the issuance of a peremptory writ in the first instance dispenses "with the need to await the filing of a return, oral argument, and the preparation of an appellate opinion." (36 Cal.3d at p. 178, fn. omitted.) As noted above, however, elsewhere the decision states that the Court of Appeal generally should afford the respondent and/or real party in interest the opportunity to present written opposition (*id.* at p. 180); the court also must set forth its decision "in writing with reasons stated" (*id.* at p. 178, fn. 6). Thus, *Palma's* statement that issuance of a peremptory writ in the first instance dispenses with the need to await a "return" and "an appellate opinion" means that the written opposition need not satisfy the requirements for a formal return by demurrer and/or answer (§ 1089; rule 56(e); cf. § 1107 and rule 56(b) [authorizing the filing of points and authorities in opposition to the petition]), and that the court might choose to write a decision that is not as exhaustive as an opinion resolving the same issues on appeal might have been. Our decision in *Palma* did not analyze the legal basis for the statement that there is no need to await oral argument when a peremptory writ is issued in the first instance, and we had no occasion in that case actually to decide whether an appellate court may deny the parties an opportunity to present oral argument before the court issues a peremptory writ of mandate or prohibition in the first instance.

Our opinion in *Bay Development, supra,* 50 Cal.3d 1012, includes similar comments indicating that an appellate court is not required to provide an

opportunity for oral argument before issuance of a peremptory writ in the first instance. A jurisdictional question in *Bay Development* required us to determine the date of finality of the Court of Appeal's decision denying a peremptory writ of mandate. The Court of Appeal had issued neither an alternative writ nor an order to show cause, but it heard oral argument, resolved the matter in a written opinion, and denied a petition for rehearing on the merits. Under rule 24(a), a decision of the Court of Appeal denying a petition for writ of mandate without issuance of an alternative writ or order to show cause becomes final as to that court immediately after filing, and, once final, the decision is not subject to rehearing. In explaining why this finality provision was inapplicable under the circumstances, we noted that the Court of Appeal has three options when considering a petition for writ of mandate: "(1) deny the petition summarily; (2) grant a peremptory writ in the first instance without a hearing, after compliance with the procedure set forth in *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-180 . . . ; or (3) grant a hearing on the merits by issuing an alternative writ or order to show cause. (See §§ 1085, 1087, 1088. See generally *Palma, supra*, 36 Cal.3d at pp. 177-180; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, §§ 165, 170, 196, pp. 801, 803-804, 824; Cal. Civil Writ Practice (Cont.Ed.Bar 1987) § 10.25, p. 407.) In our view, rule 24(a)'s exception to the ordinary 30-days-after-filing date of finality was intended to apply only to summary denials of writ petitions by the Court of Appeal, and not to cases—such as this case—in which the Court of Appeal sets a writ matter for oral argument, hears oral argument and resolves the matter by full written opinion. (See 8 Witkin, Cal. Procedure, Extraordinary Writs, *op. cit. supra*, §§ 212, 213, at pp. 838-839.) [¶] In order to fulfill the purposes of rule 24(a) and to prevent the provisions of the rule's exception from becoming an unconscionable trap for the unwary, we conclude that the order of the Court of Appeal setting this matter for oral argument must properly be treated as the issuance of 'an alternative writ or order to show cause' *for purposes of rule 24(a)*." (*Bay Development, supra*, 50 Cal.3d at p. 1024, italics added.) Our decision added the following advice: "To avoid any possible confusion, in the future all Courts of Appeal should follow the contemplated statutory procedure by issuing an alternative writ or order to show cause before setting a writ matter for oral argument." (*Id.* at p. 1025, fn. 8; see also *Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 228, fn. 2 [45 Cal.Rptr.2d 207, 902 P.2d 225] [reiterating this directive].)

Although the foregoing discussion in *Bay Development* suggests that a Court of Appeal hears oral argument on petitions for a writ of mandate only after issuing an alternative writ or order to show cause, we had no reason in *Bay Development* to decide whether the parties must be afforded an opportunity for oral argument before an appellate court issues a peremptory writ in

the first instance. Rather, our conclusion that rule 24(a)'s immediate-finality provision did not apply to the decision *denying* the peremptory writ turned upon the reasonable expectations of the parties. The Court of Appeal's Internal Operating Practices and Procedures had suggested that oral argument in an original writ proceeding would be ordered only after issuance of an alternative writ or order to show cause. In addition, by permitting the filing of, and thereafter ruling upon, a petition for rehearing, the Court of Appeal itself had proceeded on the assumption that the normal rule of finality applied. (*Bay Development, supra,* 50 Cal.3d at pp. 1024-1025 & fn. 7.) Our decision was confined to the proper interpretation and application of rule 24(a), and our limited holding was that the provision in that rule for immediate finality "upon the denial of a petition for a writ . . . without issuance of an alternative writ or order to show cause" applies only to orders summarily denying the writ without oral argument and a full written opinion.

Our subsequent decisions have not suggested that the foregoing dicta in *Palma* and *Bay Development* regarding oral argument were dispositive of the issue. To the contrary, in more recent decisions we expressly have reserved the question whether an appellate court must provide an opportunity for oral argument before issuing a peremptory writ in the first instance. (*Alexander, supra,* 5 Cal.4th at p. 1223, fn. 3 [noting but deferring consideration of the issue]; *Kowis, supra,* 3 Cal.4th at p. 899 [same]; see also Cal. Civil Writ Practice (Cont.Ed.Bar 1998) § 10.113, pp. 400-401 [this court has not decided the issue, but some Courts of Appeal afford the parties an opportunity for oral argument after issuing a *Palma* notice].) We proceed to resolve that issue.

### B

Some Courts of Appeal understandably have interpreted this court's decisions to mean that parties need not be provided an opportunity for oral argument under the accelerated procedure for issuance of a peremptory writ in the first instance. (E.g., *PH II, Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 1680, 1683 [40 Cal.Rptr.2d 169]; *Street* v. *Superior Court* (1990) 224 Cal.App.3d 1397, 1404 [274 Cal.Rptr. 595]; *State Farm Fire & Casualty Co.* v. *Superior Court* (1988) 206 Cal.App.3d 1428, 1432-1433 [254 Cal.Rptr. 543].) Other courts, sometimes citing authority conferring a right to oral argument on appeal,[4] have afforded the parties an opportunity for oral argument before issuance of the writ in the first instance. (E.g.,

---

[4]*People* v. *Brigham* (1979) 25 Cal.3d 283, 285-289 [157 Cal.Rptr. 905, 599 P.2d 100] (*Brigham*) (criminal appeals); *Moles* v. *Regents of the University of California* (1982) 32 Cal.3d 867, 870-874 [187 Cal.Rptr. 557, 654 P.2d 740] (*Moles*) (civil appeals).

*Catanese* v. *Superior Court* (1996) 46 Cal.App.4th 1159, 1166, fn. 5 [54 Cal.Rptr.2d 280]; *La Paglia* v. *Superior Court* (1989) 215 Cal.App.3d 1322, 1324, fn. 1 [264 Cal.Rptr. 63]; *California Trial Lawyers Assn.* v. *Eu* (1988) 200 Cal.App.3d 351, 362 [245 Cal.Rptr. 916].)[5]

 The Greens rely primarily upon the right to oral argument on appeal, contending that whenever the Court of Appeal renders a decision resolving a cause and establishing law of the case—including a decision directing issuance of a peremptory writ in the first instance—the parties have a constitutional and statutory right to oral argument before the writ issues. Because we need not reach the Greens' constitutional arguments if applicable statutes confer a right to oral argument, we first examine the statutory language. (*Santa Clara County Local Transportation Authority* v. *Guardino, supra,* 11 Cal.4th at pp. 230-231 [this court will not decide constitutional questions where other grounds are available and dispositive of the matter before us].)

---

[5]Some Courts of Appeal that include provisions regarding this issue in their Internal Operating Practices and Procedures state that they do not hear oral argument before issuing a peremptory writ in the first instance. Thus, the Internal Operating Practices and Procedures of the Courts of Appeal for the Second District, Division Seven (XII, Original Proceedings), Fourth District, Division One (V, Appeals), and Fifth District (III, subd. (C), Writs) expressly provide that, at least on some occasions, no oral argument is held before issuance of a peremptory writ in the first instance.

The Sixth District, however, specifies that if "the court preliminarily determines that affirmative relief [requested in a writ proceeding] should be granted, the court will proceed by way of the alternative writ and issue an order to show cause." (Ct. App., 6th Dist., Internal Operating Practices & Proc., II, subd. (D), Original & Discretionary Proceedings.) The Second District, Division Two, provides that "[w]rits granted are calendared and thereafter treated in precisely the same manner as cases originally assigned" (Ct. App., 2d Dist., Div. 2, Internal Operating Practices & Proc., VII, Original Proceedings), although it is unclear whether this provision applies to peremptory writs issued in the first instance.

Chief Justice Lucas's concurring opinion in *Bay Development, supra,* 50 Cal.3d at pages 1036-1037 and footnote 1, commented upon rule 3 of the Local Rules of the Fourth District, Division One, which provides that the court will accept for filing only those petitions for writs of mandate and prohibition that "pray solely for a peremptory writ"; the court does not accept petitions that request issuance of an alternative writ. On the other hand, that court's procedures (Ct. App., 4th Dist., Div. 1, Internal Operating Practices & Proc., V, Original Proceedings) specify that the court may choose to issue an alternative writ or order to show cause. The concurring opinion in *Bay Development* observed that rule 3 and Internal Operating Practices and Procedures V indicate that this division of the Court of Appeal has "fail[ed] to conform its practices with those required statewide by the general procedures and rules governing writ practice" (50 Cal.3d at pp. 1036-1037), and the concurring opinion questioned the purpose of refusing to accept petitions requesting alternative writs where the court simply may issue a *Palma* notice when it wishes to issue a peremptory writ in the first instance. We agree with these observations. Because an appellate court clearly has authority to issue an alternative writ, and indeed the more common practice is to issue an alternative writ or order to show cause rather than a peremptory writ in the first instance, a petitioner should not be precluded from requesting an alternative writ.

■ "The court's role in construing a statute is to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.] In determining the Legislature's intent, a court looks first to the words of the statute. [Citation.] . . . [¶] . . . [The] court gives the language its usual, ordinary meaning. [Citations.] If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs. [Citations.]" (*People* v. *Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].) " 'The words, however, must be read in context, considering the nature and purpose of the statutory enactment.' [Citation.] In this regard, sentences are not to be viewed in isolation but in light of the statutory scheme. [Citation.]" (*Torres* v. *Automobile Club of So. California* (1997) 15 Cal.4th 771, 777 [63 Cal.Rptr.2d 859, 937 P.2d 290].)

Statutes governing prerogative writs are found in part 3 of the Code of Civil Procedure, entitled "Of Special Proceedings of a Civil Nature." Title 1 of part 3 sets forth procedures applicable to writs of review, mandate, and prohibition. Sections 1087 and 1088 distinguish between alternative and peremptory writs of mandate.

Section 1087 states: "The writ may be either alternative or peremptory. The alternative writ must command the party to whom it is directed immediately after the receipt of the writ, or at some other specified time, to do the act required to be performed, or to show cause before the court at a time and place then or thereafter specified by court order why he has not done so. The peremptory writ must be in a similar form, except that the words requiring the party to show cause why he has not done as commanded must be omitted."

Section 1088, which authorizes issuance of a peremptory writ of mandate in the first instance, states: "When the application to the court is made without notice to the adverse party, and the writ is allowed, the alternative must be first issued; but if the application is upon due notice and the writ is allowed, the peremptory may be issued in the first instance. With the alternative writ and also with any notice of an intention to apply for the writ, there must be served on each person against whom the writ is sought a copy of the petition. The notice of the application, when given, must be at least ten days. The writ cannot be granted by default. *The case must be heard by the court, whether the adverse party appears or not.*" (Italics added.) This statute also is made applicable to writs of prohibition by section 1105.[6]

---

[6]Section 1105 states: "The provisions of the preceding Chapter [part 3, title 1, chapter 2, regarding writs of mandate], *except the first four sections thereof,* apply to this proceeding [regarding writs of prohibition]." (Italics added.) When section 1105 was enacted in 1872, the

The italicized portion of section 1088 may be interpreted to require a "hearing" before the issuance of a peremptory writ of mandate or prohibition. Certain language in section 1094 also is amenable to such an interpretation: "If no return be made, the case *may be heard* on the papers of the applicant. If the return raises only questions of law, or puts in issue immaterial statements, not affecting the substantial rights of the parties, the court *must proceed to hear or fix a day for hearing the argument* of the case." (Italics added.)[7]

Other sections concerning prerogative writs mention hearings or arguments but do not appear to require them. Thus, section 1108 states: "Writs of review, mandate, and prohibition issued by the Supreme Court, a court of appeal, or a superior court, may, *in the discretion of the court* issuing the writ, be made returnable, *and a hearing thereon be had at any time.*" (Italics added.) Section 1090 provides: "If a return be made, which raises a question as to a matter of fact essential to the determination of the motion, and affecting the substantial rights of the parties, . . . the court may, *in its discretion,* order the question to be tried before a jury, *and postpone the argument* until such trial can be had . . . ." (Italics added; see also rule 56(e) ["the return shall be made at least five days before the date set for hearing"].)[8]

---

first four sections of chapter 2 were sections 1084, 1085, 1086, and 1087. Section 1085.5 was added to chapter 2 in 1985, but section 1105 has remained unchanged. Thus, section 1087 no longer is included among the first four sections referenced in section 1105. This discrepancy appears to have been an oversight, because section 1087 specifies the form of writs of mandate, whereas section 1104 continues to specify the form of writs of prohibition.

[7]Before section 1094 was amended in 1982, and ever since that statute first was enacted as part of the California Practice Act (Stats. 1851, ch. 5, § 476, p. 126), the first sentence of former section 1094 also used mandatory language: "If no return be made, the case *must* ["*shall*" in the 1851 version] be heard on the papers of the applicant." (Italics added.) Apparently the change from "must" to "may" was necessary because the new paragraph added to section 1094 in 1982 specifies that a trial court also may determine the matter by "noticed motion of any party." Thus, the statute permits the adverse party to file a motion for a judgment on the peremptory writ, without filing a formal return. The trial court then may render judgment on the writ petition after considering the "papers of the applicant" together with the papers included with the adverse party's motion. The previous version of section 1094 would have precluded consideration of such papers if no return was filed. (See also § 1107 and rule 56(b) [authorizing the filing of points and authorities in opposition to a writ petition filed in an appellate court].) Accordingly, the Legislature's change of the term "must" to "may" does not appear to have been intended to dispense with the requirement that the case must be heard if no return is filed, but rather to permit consideration of written opposition presented in a form other than a return, which must conform to the usual rules of pleading governing an answer or demurrer in a civil action. (See 8 Witkin, Cal. Procedure, *supra,* Extraordinary Writs, §§ 194, 195, p. 987.)

[8]Section 1107, which contains general provisions regarding applications for all types of prerogative writs, states in part: "The court in which the application is filed, in its discretion and for good cause, may grant the application ex parte, without notice or service of the

The question is whether the foregoing references to a requirement that the case "must be heard" or to a "hearing [of] the argument" were intended to encompass an oral presentation in addition to written argument. The terms "hear" and "hearing" are not defined in the Code of Civil Procedure. The usual and ordinary meaning of these words most commonly includes an auditory component,[9] but when used in a legal sense they do not necessarily encompass oral presentations. One legal dictionary defines the word "hearing," first, as a "proceeding . . . in which witnesses are heard and evidence is presented." (Black's Law Dict. (6th ed. 1990) p. 721, col. 1; accord, *People* v. *Pennington* (1967) 66 Cal.2d 508, 521 [58 Cal.Rptr. 374, 426 P.2d 942] ["A 'hearing' is generally understood to be a proceeding where evidence is taken to the end of determining an issue of fact and a decision made on the basis of that evidence. [Citation.]"].) This dictionary also observes, however: "[The word 'hearing'] is frequently used in a broader and more popular significance to describe whatever takes place before magistrates clothed with judicial functions and sitting without [a] jury at any stage of the proceedings subsequent to its inception . . . . [An administrative hearing] consists of any confrontation, *oral or otherwise*, between an affected individual and an agency decision-maker sufficient to allow [an] individual to present his [or her] case in a meaningful manner." (Black's Law Dict., *supra*, p. 721, cols. 1-2; italics added; see also Webster's New Internat. Dict., *supra*, p. 1044, col. 2 [defining "hearing" as an "opportunity to be heard *or to present one's side of a case*" (italics added)]; but cf. *McCullough* v. *Terzian* (1970) 2 Cal.3d 647, 656 [87 Cal.Rptr. 195, 470 P.2d 4, 47 A.L.R.3d 266] [due process requires that welfare recipient be offered the opportunity to "present his case orally . . . before the person who will make the decision regarding his eligibility for future benefits"].)

Accordingly, California courts have concluded that use of the terms "heard" or "hearing" does not require an opportunity for an oral presentation, unless the context or other language indicates a contrary intent. In *Niles*

application as herein provided." Because section 1088 requires notice and a hearing before issuance of a peremptory writ in the first instance, however, the general provision authorizing the court to grant a petition ex parte is inapplicable in that context. (See *Lake* v. *Reed* (1997) 16 Cal.4th 448, 464 [65 Cal.Rptr.2d 860, 940 P.2d 311] ["a more specific statute controls over a more general one"].) As mentioned previously, the court may issue an *alternative* writ ex parte. (Rule 56(b).)

[9]The word "hear" is defined as follows: "to be made aware of by the ear [or] apprehend by the ear," "to be informed or gain knowledge of by hearing," "to listen to with favor or compliance," "to listen to with care or attention," "to attend and listen to," "to listen to the recitation of," "to give a legal hearing to," or "to take testimony from." (Webster's New Internat. Dict. (3d ed. 1981) p. 1044, col. 2.) The term "hearing" includes the following definitions: "the act or power of apprehending sound," "the act or instance of actively or carefully listening (as to a speaker or performer)," "opportunity to be heard or to present one's side of a case," "a trial in equity practice," or "a listening to arguments or proofs and arguments in interlocutory proceedings." (*Ibid.*)

v. *Edwards* (1892) 95 Cal. 41 [30 P. 134], we construed article VI, section 2 of the California Constitution of 1879. That provision described this court's power to determine causes in bank after a decision had been rendered by one of the court's three-justice departments then authorized to decide causes. The constitutional provision permitted the Chief Justice or any four justices to order a pending cause, before or after judgment pronounced by a department, "to be heard and decided by the court in bank." In *Niles*, after a department had heard oral argument and rendered a judgment, the court rendered an in bank order and opinion modifying the judgment of the department. In a subsequent in bank opinion, the court rejected the contention that it had no authority to render an in bank decision without hearing oral argument: "[Article VI, former section 2] . . . does not necessarily imply that an additional or oral argument must be made or listened to before [a cause] can be so considered or determined. [¶] The term 'heard,' as here used, is taken from the practice in equity procedure, and corresponds to the term 'trial,' as used in cases at law. It signifies the consideration and determination of a cause by the court or by a judge, as distinguished from a trial of a cause, which is a term more properly predicated of its determination by a jury. [Citations.]" (95 Cal. at p. 43; see also *Schlessinger* v. *Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1105 [47 Cal.Rptr.2d 650] [an arbitrator's duty to "hear" evidence under section 1286.2, subdivision (e), does not require the oral presentation of evidence or live testimony].)

In *Mediterranean Construction Co.* v. *State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257 [77 Cal.Rptr.2d 781] (*Mediterranean*), on the other hand, the Court of Appeal concluded that the statute governing summary judgment motions, when considered in context, requires an oral hearing. The court relied upon references in that statute to the "time appointed for hearing," and a requirement that objections not made "at the hearing" be deemed waived. (§ 437c, subds. (a), (d).) It also observed that rules 343 and 345, providing that litigants who raise evidentiary objections at the hearing must arrange for a court reporter, similarly reflect an intention to provide for oral argument. (66 Cal.App.4th at pp. 262-264.)[10]

A majority of other jurisdictions have concluded that the use of the term "hearing" in a statute does not confer a right to oral argument unless

[10]The court in *Mediterranean* disagreed with *Sweat* v. *Hollister* (1995) 37 Cal.App.4th 603, 613-614 [43 Cal.Rptr.2d 399], disapproved on other grounds in *Santisas* v. *Goodin* (1998) 17 Cal.4th 599, 609, footnote 5 [71 Cal.Rptr.2d 830, 951 P.2d 399], to the extent *Sweat* determined that references to a hearing in section 437c do not require an opportunity for oral argument before a final ruling on such a motion. (*Mediterranean, supra,* 66 Cal.App.4th at pp. 265-266.) We have no occasion in this case to consider the validity of either the *Sweat* or *Mediterranean* decisions; nor do we express any view regarding the conclusion reached in *Schlessinger* v. *Rosenfeld, Meyer & Susman, supra,* 40 Cal.App.4th 1096.

additional statutory language or the context indicates otherwise. (*Lujan* v. *National Wildlife Federation* (1990) 497 U.S. 871, 910-911 [110 S.Ct. 3177, 3200, 111 L.Ed.2d 695] (dis. opn. of Blackmun, J.) [rule 56 of the Federal Rules of Civil Procedure (28 U.S.C.), referring to hearings on summary judgment motions, does not necessarily contemplate an oral hearing]; *Moore* v. *State of Florida* (11th Cir. 1983) 703 F.2d 516, 519 [same]; *Lawless* v. *Central Production Credit* (1992) 228 Ill.App.3d 500 [592 N.E.2d 1210, 1219] ["the word 'hearing' is not necessarily restricted to an oral presentation by the parties and may instead refer to the court's consideration of a written presentation by the parties"]; *Schmidt* v. *Boyle* (1898) 54 Neb. 387 [74 N.W. 964, 965] [The use of the word "heard" in a state constitutional provision conferring a right to be heard in the court of last resort was not intended "to indicate that an oral presentation of a controversy to the court should not be refused, but was intended in the sense of 'review.' "]; *In re Swain* (1991) 68 Ohio App.3d 737 [589 N.E.2d 483, 485] ["The term 'hearing' has been liberally construed and may be limited to a review of the record without oral argument."]; *Gulf Coast Investment Corp.* v. *Nasa 1 Business Center* (Tex. 1988) 754 S.W.2d 152, 153 ["Unless required by the express language or the context of the particular rule, . . . the term 'hearing' does not necessarily contemplate either a personal appearance before the court or an oral presentation to the court."]; see also Friendly, *Some Kind of Hearing* (1975) 123 U. Pa. L.Rev. 1267, 1270 (hereafter *Some Kind of Hearing*) ["Although the term 'hearing' has an oral connotation, I see no reason why in some circumstances a 'hearing' may not be had on written materials only." (Fn. omitted.)].)[11]

Thus, in determining whether the Legislature intended that the words "heard" or "hearing" as used in the statutes regarding prerogative writs must include a consideration of oral argument, we examine the context in which those terms appear. Other words used in these provisions suggest that, at least in some circumstances, the Legislature did contemplate that the hearing of the matter would include an appearance and oral argument by the parties. Section 1094's statement that "the court must proceed to hear or fix a day for hearing the argument of the case," and section 1090's provision allowing the court to "postpone the argument" until after a trial of factual issues, both

---

[11]The minority view is that the use of the term "hearing" does convey an intention that the court hear oral argument. (E.g., *Com.* v. *Davis* (1992) 531 Pa. 272 [612 A.2d 426, 429] ["a hearing intends a judgment bench attended by judges or officials sitting in a judicial capacity, prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially, and the mere consideration of a [sentencing] report moving across one's desk, is not a hearing"]; *Kay* v. *Kay* (Fla.Dist.Ct.App. 1983) 430 So.2d 532, 533, fn. 2 ["To be 'heard' on one's exceptions [to a referee's report] means to appear before the judge and present one's argument in support of the exceptions."].)

suggest that the hearing of the argument will occur at a specific time.[12] Similarly, rule 56(e) specifies that "the return shall be made at least five days before the date set for hearing." If "hearing" simply meant "consideration" of written arguments, there would be no need to select a particular date for considering the arguments. (See *Gulf Coast Investment Corp.* v. *Nasa 1 Business Center, supra,* 754 S.W.2d at p. 153 [where a rule required the court to notify the parties of the "date, time and place of the hearing," the trial court abused its discretion in refusing to hold an oral hearing].)

All these references to setting a time for, and hearing, the argument regarding a petition for a prerogative writ, however, appear in provisions that apply only if a return is filed. Rule 56 makes clear that the respondent or real party in interest may file a return in an appellate court only after the court grants a petition for an alternative writ or issues an order to show cause. (Rule 56(b) [the respondent and/or real party in interest may file *points and authorities* in opposition to the petition within five days after service and filing]; rule 56(e) ["If . . . a writ or order to show cause issues, the respondent or real party in interest or both . . . may make a return, by demurrer, verified answer or both."]; § 1089 [reserving to the Judicial Council the authority to adopt rules regarding returns to alternative writs and to applications for writs]; see also *Palma, supra,* 36 Cal.3d at pp. 177-178; 8 Witkin, Cal. Procedure, *supra,* Extraordinary Writs, § 181, pp. 977-978.) When no return is filed, applicable statutes refer only to a requirement that the case be "heard." (§§ 1088, 1094.)

The use of the term "heard" in section 1088, authorizing issuance of a peremptory writ in the first instance, does not appear to contemplate consideration of oral argument. In context, the requirement that the case "must be heard" means that the court cannot issue the writ by default, but rather must consider and evaluate the petition before granting the relief requested, even if the adverse party does not respond to the petition.[13] Similarly, section 1094's statement that, if no return is filed, "the case may be heard on the papers of the applicant," reasonably is construed to mean that the appellate

[12]Because it is written in the disjunctive, section 1094's requirement that "the court must proceed to hear *or* fix a day for hearing the argument of the case" (italics added) arguably contemplates that, under some circumstances, a court may consider written arguments alone, without setting a particular day for the hearing.

[13]In challenging this conclusion, Justice Kennard's dissenting opinion contends that the term "appears" in the relevant sentence of section 1088—"The case must be heard by the court, whether the adverse party *appears* or not" (italics added)—must refer to a physical appearance in court. (See dis. opn of Kennard, J., *post,* at pp. 1267-1268.) This contention, however, overlooks section 1014's express definition of the term "appears" in this legal context: "A defendant appears in an action when the defendant answers, demurs, files a notice of motion to strike, . . . [or] gives the plaintiff written notice of appearance . . . ." This definition is made applicable to writ proceedings by section 1109.

court may consider the applicant's petition and decide the case upon the basis of the showing made therein. This construction of these provisions is consistent with the conclusion in *Niles* v. *Edwards, supra,* 95 Cal. at pages 43-44, that the term "heard" means the consideration and determination of a case, and does not require, invariably, the presentation of oral argument. (See also *Ellerbroek* v. *Saddleback Valley Unified School Dist.* (1981) 125 Cal.App.3d 348, 359 [177 Cal.Rptr. 910] [" 'the only prohibited procedure [under sections 1088 and 1094] is an entry of judgment by default for failure to file any answering pleading' "], quoting 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 164, pp. 3929-3930 [see identical passage at 8 Witkin, Cal. Procedure, *supra,* Extraordinary Writs, § 200, p. 992].)

Although no opinions have provided a legal analysis of the issue, several Court of Appeal cases—decided before we stated in *Palma* that the issuance of a peremptory writ in the first instance dispenses with the need for oral argument—are consistent with our conclusion that statutes governing the issuance of writs of mandate and prohibition do not require an opportunity for oral argument in this situation. For example, in *Davis* v. *Superior Court* (1980) 102 Cal.App.3d 164 [162 Cal.Rptr. 167], the Court of Appeal concluded that the superior court had lacked jurisdiction in the underlying matter. In deciding to issue a peremptory writ in the first instance, the court explained: "Under normal circumstances we would issue [a] writ of certiorari in order to review the trial court proceedings for jurisdictional defects [citation]. Here, however, petitioner has presented a full record of the lower court proceedings. *Oral argument on the petition would add little,* since we have been advised that real party in interest has not authorized appearance by an attorney. We find the law quite clear. Thus, we will treat the petition as one for [a] writ of mandate and issue the peremptory writ in the first instance. [Citations.]" (*Id.* at pp. 170-171, fn. omitted, italics added.) The opinion in *Davis* cites two decisions in support of its disposition. Although those cases do not refer expressly to oral argument, their discussion of procedures governing peremptory writs implies that oral argument is not required before issuing the writ in the first instance: "The petition filed with this court, the answer thereto by the real parties in interest, and the briefs of petitioner and the real parties in interest, fully present the determinative issues in the premises. An alternative writ or order to show cause would add nothing to the full presentation already made." (*San Diego Wholesale Credit Men's Assn.* v. *Superior Court* (1973) 35 Cal.App.3d 458, 464-465 [110 Cal.Rptr. 657]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165].)

Courts of Appeal also have issued peremptory writs in the first instance without hearing oral argument where placing the matter on calendar would

have delayed resolution of a case requiring an immediate decision. For example, in *Friends of Assemblywoman La Follette* v. *Superior Court* (1982) 134 Cal.App.3d 832, 840 [184 Cal.Rptr. 856], the court stated: "Because of the urgency presented by the imminence of the . . . election, and because the parties have fully briefed the issues before this court and the process of issuing an alternative writ and placing the matter on calendar for argument would significantly delay our resolution of this matter until shortly before the election, this is an appropriate case for issuance of the peremptory writ in the first instance as authorized by section 1088 of the Code of Civil Procedure." (See also *Bolles* v. *Superior Court* (1971) 15 Cal.App.3d 962, 963 [93 Cal.Rptr. 719] ["Because of the urgency created by the impending trial, we are directing the issuance of a peremptory writ in the first instance without the issuance of [an] alternative writ."].)[14]

Subsequently, in both *Palma, supra,* 36 Cal.3d at page 178, and *Bay Development, supra,* 50 Cal.3d at page 1024, we indicated that an appellate court may issue a peremptory writ in the first instance without hearing oral argument. Although, as mentioned previously, those statements were dicta, both cases clearly interpret the controlling statutes as permitting issuance of the writ in the first instance without affording the parties an opportunity to present oral argument. That interpretation is consistent with the long-standing construction of these provisions by Court of Appeal decisions and leading treatises, and with our statutory analysis set forth above. Moreover, on a number of occasions this court has issued peremptory writs in the first instance without providing an opportunity for oral argument. (See rule 28(g) ["When review is granted [by the Supreme Court], the cause shall be placed on the calendar for oral argument *unless . . . the court . . . issues a peremptory writ.*" (Italics added.)].)

 Therefore, we conclude that the statutes governing writs of mandate and prohibition do not require an appellate court to provide an opportunity

---

[14]An edition of Witkin's California Procedure that preceded our decision in *Palma* also indicated that the generally understood rule at the time was that an opportunity for oral argument was not required before a reviewing court issued a peremptory writ in the first instance. Thus, the treatise stated: "In prohibition and mandamus, the ultimate relief is granted by issuance of the writ. *Hence, if, as is usual, a hearing is to be given on the petition and opposition, the preliminary step is an alternative writ.* The alternative writ is in the nature of an order to show cause, and sometimes a simple order to show cause is issued in lieu thereof. [Citations.] [¶] . . . In rare cases the court will make a final decision on the initial showing; i.e., if the respondent and real party in interest had due notice, the issue is apparent and *the right to relief is clear, and the usual procedure would only cause delay,* 'the peremptory writ may be issued in the first instance.['] [Citations.]" (5 Witkin, Cal. Procedure (2d ed. 1971, *supra*) Extraordinary Writs, § 149, p. 3919, italics added.) The most recent edition of Witkin is in accord. (8 Witkin, Cal. Procedure (4th ed. 1997, *supra*) Extraordinary Writs, §§ 186, 224, 227, pp. 981, 1016-1017, 1020-1021.)

for oral argument before issuing a peremptory writ in the first instance as authorized by section 1088. We thus proceed to consider the Greens' argument that they have a constitutional right to oral argument in this context.

## C

The right to oral argument on appeal is well established in this state. In *Brigham, supra*, 25 Cal.3d 283, the Court of Appeal denied the defendant's request for oral argument and summarily affirmed his conviction. We reversed the Court of Appeal's judgment on the ground that it had denied defendant the right to oral argument, which we traced to the state Constitution, the Penal Code, the California Rules of Court, and prior decisions of this court. Article VI, section 2 of the California Constitution provides in part: "Concurrence of 4 judges present at the argument is necessary for a judgment" by the Supreme Court. Section 3 of that article, applicable to Courts of Appeal, similarly provides in relevant part: "Concurrence of 2 judges present at the argument is necessary for a judgment." Our decision in *Brigham* notes that in *Metropolitan Water Dist.* v. *Adams* (1942) 19 Cal.2d 463, 468 [122 P.2d 257], we "recognized that article VI, section 2 had to be complied with if a valid appellate judgment on the merits was to be handed down by the Supreme Court. '[T]he right to oral argument in matters on the calendar in open sessions of the court has always been accorded and the necessity for the concurrence of four members of the court who were present at the argument in pronouncing judgment in the cause has always been scrupulously adhered to and enforced.' [Citation.]" (*Brigham, supra*, 25 Cal.3d at p. 288.)

*Brigham* also found an implicit right to oral argument in former rule 22, which specified the sequence of argument and the time allotted for each party's counsel.[15] The view of the rule's drafter was considered persuasive: " 'The right of counsel to argue a cause orally before the reviewing court is

---

[15]Former rule 22 stated, at the time *Brigham* was decided: "Unless otherwise ordered: (1) counsel for each party shall be allowed 30 minutes for oral argument; (2) not more than one counsel on a side may be heard except that different counsel for the appellant or the moving party may make opening and closing arguments; (3) each party and intervener who appeared separately in the court below may be heard by his own counsel; and (4) the appellant or the moving party shall have the right to open and close."

Effective January 1, 1998, former rule 22 was amended and now applies only to oral argument in the Supreme Court; new rule 22.1 governs oral argument in the Court of Appeal. Rule 22 now states: "(a) This rule governs oral argument in the Supreme Court unless the court provides otherwise by order or in its Practices and Procedures. [¶] (b) Counsel for each side is allowed 45 minutes for oral argument in a death penalty appeal and 30 minutes for oral argument in all other cases. [¶] (c) The petitioner or appellant has the right to open and close. If two or more parties petition for review, the court will indicate the order of argument.

implicit in Rule 22 and [former] Rule 28(f) [concerning oral argument in the Supreme Court]. *Generally speaking, the right exists in any appeal or original proceeding which is considered on the merits and decided by a written opinion. . . .'* (Witkin, *New California Rules on Appeal,* part two (1944) 17 So.Cal.L.Rev. 232, 243-244, fn. omitted.)" (*Brigham, supra,* 25 Cal.3d at pp. 285-286, fns. omitted, italics added.) Similarly, an implicit right to oral argument was found in Penal Code section 1254, which specifies the number of counsel to be heard on each side during the oral argument.[16] Finally, we cited previous decisions suggesting that oral argument on appeal is a right. (E.g., *People* v. *Medina* (1972) 6 Cal.3d 484, 489 [99 Cal.Rptr. 630, 492 P.2d 686], disapproved on other grounds in *Kowis, supra,* 3 Cal.4th at pp. 896-899 ["Important incidents of the right to appeal from a superior court's judgment are the right to present oral argument in the appellate court . . . ."]; *Philbrook* v. *Newman* (1905) 148 Cal. 172, 178-179 [82 P. 772] [case could be decided on briefs alone because appellant waived oral argument]; *Luco* v. *De Toro* (1891) 88 Cal. 26, 27 [25 P. 983] [decision was set aside because it was concurred in by a fourth justice who was not present at the oral argument].)

We recognized the right to oral argument in civil appeals in *Moles, supra,* 32 Cal.3d 867, which held that a justice not present at the argument of an appeal cannot participate in the decision. We explained that "[t]o hold otherwise would inevitably infringe the right of litigants to oral argument on appeal, a right recently reaffirmed" in *Brigham.* (*Id.* at p. 871.) Acknowledging that *Brigham* involved a criminal, rather than a civil, appeal, our decision observed that "with the exception of the Penal Code and cases decided thereunder, the authority cited in *Brigham* is equally applicable to civil appeals." (*Ibid.*) We reiterated that article VI, sections 2 and 3 of the

[¶] (d) In a death penalty appeal, two counsel may argue on each side under Penal Code section 1254 if they notify the court *not later than 10 days before* the date of the argument that they require argument by two counsel. In other cases, no more than one counsel may be heard on each side—even if there is more than one party on each side—unless the court orders otherwise. A request to divide oral argument among two or more counsel shall be filed not later than 10 days after the date of the order setting the case for oral argument."

New rule 22.1 states: "(a) This rule governs oral argument in the Court of Appeal unless the court provides otherwise by order or local rule. [¶] (b) Counsel for each side is allowed 30 minutes for oral argument. If multiple parties who are represented by separate counsel or counsel for amicus curiae request argument, the court may apportion or expand the time according to the respective parties' interests. [¶] (c) The appellant or moving party has the right to open and close. If two or more parties file a notice of appeal, the court will indicate the order of argument. [¶] (d) No more than one counsel may argue for each party who appeared separately in the court below, unless the court orders otherwise. [¶] (e) Upon written request, the court may grant or deny any amicus curiae the opportunity to argue."

[16]Penal Code section 1254 states: "Upon the argument of the appeal, if the offense is punishable with death, two counsel must be heard on each side, if they require it. In any other case the Court may, in its discretion, restrict the argument to one counsel on each side."

California Constitution implicitly recognize "the right to oral argument in *all* appeals . . . ," and that Witkin had stated that, in general, there is a right to oral argument in any appeal or original proceeding considered on the merits and decided by a written opinion. (32 Cal.3d at pp. 871-872, original italics.) Our decision also noted policy reasons underlying the right to oral argument: as the only opportunity for a direct dialogue between the litigant and the bench, it promotes understanding in ways that cannot be matched by written communication, and for many judges a personal exchange with counsel makes a difference in result. (32 Cal.3d at pp. 872-873; cf. *Mediterranean*, *supra*, 66 Cal.App.4th 257, 264-265 [noting similar policies supporting a right to oral argument in the trial court].)

The Greens accurately observe that the issuance of a peremptory writ in the first instance by an appellate court is a final determination of a cause on the merits. (*Kowis*, *supra*, 3 Cal.4th at p. 894; *Palma*, *supra*, 36 Cal.3d at p. 178, fn. 6, 180; *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57 & fn. 11 [192 Cal.Rptr. 857, 665 P.2d 947]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 897, pp. 931-933.) It does not follow, however, that oral argument is required whenever an original proceeding is decided on the merits. Indeed, our decision in *Kowis* indicates that this issue remains undecided: "In *Moles*, *supra*, 32 Cal.3d at page 871, we suggested that the right to oral argument exists in any appeal or original proceeding decided on the merits. *We need not decide whether that is absolutely correct* . . . ." (*Kowis*, *supra*, 3 Cal.4th at p. 899, fn. omitted, italics added.)

Our decisions finding a right to oral argument on appeal traced that right to a number of sources, including the California Constitution, statutes, rules of court, and prior case law. The Greens argue that article VI, sections 2 and 3 of the California Constitution, which require the concurrence of the specified number of justices "present at the argument" to pronounce a judgment, also apply to judgments directing issuance of a peremptory writ in the first instance. Lewis, on the other hand, argues that these provisions do not extend to such proceedings. He relies in part upon *Metropolitan Water Dist.* v. *Adams*, *supra*, 19 Cal.2d 463, which held that oral argument is not required before the court rules on a petition for rehearing. Our opinion states: "But from the constitutional provision concerning argument [Cal. Const., art. VI, § 2] it does not follow that the parties are entitled to oral argument in all matters passed upon by the court in bank. When not conducting an open session, the court is convened in executive sessions at least two times each week. At these sessions numerous matters are ruled upon, such as applications for writs, petitions for transfer from the District Courts of Appeal, and petitions for rehearing of our own decisions. These matters are disposed of by order of at least four members of the court, but no

oral argument thereon is provided for by the Constitution or otherwise permitted, and no grounds for the rulings are stated in writing, except in very rare cases in the discretion of the court." (*Id.* at p. 468.) Lewis selectively ignores, however, the discussion immediately following this passage, which distinguishes between an order, such as an order granting rehearing, and a judgment, which constitutes " 'the final determination of the rights of the parties in an action or proceeding.' [Citation.]" (*Ibid.*) Unlike an order denying rehearing, and other orders not determining causes, a decision directing the issuance of a peremptory writ in the first instance is a "judgment" within the meaning of article VI, sections 2 and 3, and the court must set forth the grounds for such a decision.

Although a decision to issue a peremptory writ in the first instance constitutes a judgment, and article VI, sections 2 and 3 of the California Constitution apply to such proceedings, these provisions do not, by themselves, mandate an opportunity for oral argument before the court renders such a decision. In *Moles, supra,* 32 Cal.3d at page 872, we stated that these constitutional provisions contain an "implicit" recognition of a right to oral argument in all appeals. Nothing in the history of the provisions indicates that their drafters intended or believed that there should be or is a constitutional right to oral argument in all causes decided by an appellate court on the merits. Rather, these provisions may be read as requiring the concurrence of at least two Court of Appeal justices or four Supreme Court justices "present at the argument" in those circumstances when the court does hear oral argument, in order to preclude the participation of justices who did not listen to the argument. This construction finds support in prior law.

Soon after its creation, this court recognized its authority to issue a peremptory writ in the first instance. In *People* v. *Turner* (1850) 1 Cal. 143, 151, we stated: "An alternative mandamus, in the first instance, we do not deem necessary. Notice of [the] application having been given, and copies of the papers served, the court may award either an alternative or peremptory mandamus, according to the nature and exigency of the case . . . ." (Italics omitted.) This authority was codified by statute the following year. "When the application to the Court is made without notice to the adverse party, and the writ be allowed, the alternative shall be first issued; but if the application be upon due notice, and the writ be allowed, the peremptory may be issued in the first instance. The notice of the application, when given, shall be at least ten days. The writ shall not be granted by default. The case shall be heard by the Court, whether the adverse party appear or not." (Stats. 1851, ch. 5, § 470, p. 125.)

We have determined that the similar language presently used in section 1088 does not confer a right to oral argument before an appellate court

issues a peremptory writ in the first instance. The requirement that a judgment could be pronounced only with the concurrence of the requisite number of justices "present at the argument" was added to article VI, section 2 of the California Constitution in 1879. Nothing in the 1879 constitutional debates suggests that the drafters intended this provision to restrict the preexisting power to issue peremptory writs in the first instance, without hearing oral argument. In *Niles* v. *Edwards, supra,* 95 Cal. 41, we stated: "[T]he . . . clauses of [article VI, section 2 of the Constitution of 1879] that the concurrence of four justices 'present at the argument' is necessary for a judgment by the court in Bank; and that if four justices 'so present' do not concur in a judgment, all the justices qualified to 'sit' in the cause 'shall hear the argument' . . . are not to be construed as requiring that a judgment cannot be pronounced by the court in Bank unless concurred in by four of the justices who were physically present at an oral argument, or that all of the justices qualified to 'sit' shall literally 'hear' an argument, although it may be conceded that *whenever there is an oral argument, only the justices who were present at such argument would be authorized to take part in the decision of the cause.* The meaning of these clauses and the construction to be given them is, that the argument shall be 'considered' by the court, or by those of the justices who are qualified to 'act' in the cause, and that the judgment to be rendered shall be concurred in by four of the justices of the court." (*Id.* at pp. 43-44, italics added; see also *Moles, supra,* 32 Cal.3d at p. 870 ["[I]t has been the general rule in California that 'a judge not present at the argument is barred from participating in the decision.' [Citation.]"].) This interpretation is supported further by comments of the California Constitution Revision Commission, which state that article VI, section 3 "requires two judges present at the argument, *if there is argument,* to render a judgment, parallel with the provision in the Supreme Court section." (Cal. Const. Revision Com., Proposed Revision (1966) p. 86, italics added.)

The circumstance that neither *Moles* nor *Brigham* relied solely upon these constitutional provisions in holding that there is a right to oral argument on appeal also suggests the provisions independently do not confer such a right. Our holdings in those decisions also depended upon statutes and rules referring to oral argument on appeal. As established in the preceding section, the statutes governing writs of mandate and prohibition do not require an opportunity for oral argument before an appellate court issues a peremptory writ in the first instance.

Furthermore, a 1985 amendment to rule 28, governing oral argument in this court, undermines the position that rules 22 and 28 require oral argument before such a writ may issue. The former version of rule 28 considered in *Brigham* stated: "When a hearing is granted, the cause shall be placed on

the calendar for oral argument, unless oral argument is waived." (Former rule 28(f).) Our decision in *Brigham* observed that this provision superseded a former version of the rule that allowed this court to decide certain kinds of causes without oral argument. (*Brigham, supra,* 25 Cal.3d at p. 286, fn. 3.) The current version of the rule, however, states: "When review is granted, the cause shall be placed on the calendar for oral argument *unless* oral argument is waived, or *the court* transfers the cause to a Court of Appeal, dismisses review as improvidently granted, orders the cause held pending decision of another cause, or *issues a peremptory writ.*" (Rule 28(g), italics added.) The italicized language clearly indicates that a writ matter need not be placed on the calendar for oral argument in every case in which this court decides to issue a peremptory writ. Although rule 28 does not apply to the Courts of Appeal, no other rule expressly prescribes a different requirement for those courts. Moreover, because the same statutes govern writ procedure in both this court and the Courts of Appeal, it would make little sense to dispense with oral argument in this court while requiring it in the intermediate appellate courts.

Finally, no decisions of this court have construed applicable rules, statutes, or constitutional provisions as requiring an opportunity for oral argument before an appellate court issues a peremptory writ in the first instance, as did prior case law considered in *Brigham* and *Moles* regarding oral argument on appeal.[17] To the contrary, as discussed previously, a number of Court of Appeal opinions and decisions of this court have observed that oral argument is unnecessary if a court decides to issue the peremptory writ without first issuing an alternative writ or order to show cause.

The limited circumstances in which an appellate court is authorized to issue a peremptory writ in the first instance demonstrate that oral argument is unnecessary in this context. The accelerated *Palma* procedure is authorized only "when such entitlement is conceded or when there has been clear error under well-settled principles of law and undisputed facts—or when there is an unusual urgency requiring acceleration of the normal process."

---

[17]The only decision we have found suggesting that any rule, statute, or constitutional provision requires an opportunity for oral argument before issuance of a peremptory writ in the first instance is *La Paglia* v. *Superior Court, supra,* 215 Cal.App.3d at page 1324, footnote 1. After noting that the parties in that matter had been invited to present oral argument, the opinion states: "Thus the requirements for rendering a judgment set forth in article VI, section 3 of the Constitution have also been met. (See *Metropolitan Water Dist.* v. *Adams* (1942) 19 Cal.2d 463, 468 [122 P.2d 257]; *People* v. *Brigham* (1979) 25 Cal.3d 283, 288-289 [157 Cal.Rptr. 905, 599 P.2d 100].)" As the Court of Appeal's use of the "see" signal indicates, however, neither of the cases cited in support of this statement considered whether there is a right to oral argument before issuance of a peremptory writ in the first instance. The decision in *La Paglia* provides no further analysis of that issue. As we have seen, the constitutional provision does not confer such a right.

(*Ng, supra*, 4 Cal.4th at p. 35.) If the petitioner's entitlement to the writ is conceded by the affected parties, oral argument would amount to an empty gesture. If an appellate court determines that the accelerated *Palma* procedure is appropriate because there has been clear error under settled legal principles and undisputed facts, and the "petitioner's entitlement to relief is so obvious that *no purpose could reasonably be served by plenary consideration of the issue*" (*ibid.*, italics added), oral argument—like the additional briefing that would follow issuance of an alternative writ—would add nothing to the presentation already made or assist the court in reaching a decision. (See *Some Kind of Hearing, supra*, 123 U. Pa. L.Rev. at p. 1281 ["Determination whether or not an oral hearing is required should depend on the susceptibility of the particular subject matter to written presentation, on the ability of the [litigant] to understand the case against him and to present his arguments effectively in written form, and on the administrative costs." (Fn. omitted.)].) Finally, if an unusual urgency requires acceleration of the normal process, the writ petition might become moot before the court could schedule and hear oral argument, thereby depriving the court of jurisdiction where a stay or writ of supersedeas could not preserve the status quo. Such an urgency is analogous to an "exceptional circumstance" that might justify issuance of a peremptory writ in the first instance without the court's having received, or solicited, opposition from the party or parties adversely affected. (*Palma, supra*, 36 Cal.3d at p. 180.)

The Greens argue that denying oral argument in this context penalizes the real party in interest who obtained a favorable ruling in the trial court. They observe that if the real party in interest had suffered an adverse ruling in the trial court, he or she would have had the right to an appeal, including oral argument, even if the trial court's ruling obviously was correct. The Greens rely upon our decision in *Kowis, supra*, 3 Cal.4th 888, in which we held that a summary *denial* of a writ petition does not establish law of the case. One of the policy reasons supporting our holding was that a contrary rule would prevent the losing party from having an opportunity for oral argument on the issues raised in the petition. Our opinion states: "The parties should not be penalized for seeking pretrial review. If a writ petition is given full review by issuance of an alternative writ, the opportunity for oral argument, and a written opinion, the parties have received all the rights and consideration accorded a normal appeal. Granting the resulting opinion law of the case status as if it had been an appellate decision is appropriate. But if the denial followed a less rigorous procedure, it should not establish law of the case." (*Id.* at p. 899, citing *People* v. *Medina, supra*, 6 Cal.3d at p. 490 [if the summary denial of a writ petition established law of the case, "pretrial writ review would become useless for no well advised defendant would invoke that provision at the risk of losing the right to be heard at oral argument

. . . ."]; see also *Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, 230-231 [124 Cal.Rptr. 427] [summary denial of a petition for writ of prohibition precludes application of the law of the case doctrine, because the petitioners were denied the right to present oral argument].)

Unlike the summary denial of a writ petition, however, a decision to issue a peremptory writ in the first instance necessarily includes a consideration of and ruling upon the merits of the petition.[18] Moreover, such a decision is limited to those cases in which the petitioner's entitlement to the relief requested is so obvious that no purpose could be served by plenary consideration of the issue, or in which a compelling temporal urgency requires an immediate decision. The circumstance that the real party in interest would have had an opportunity for oral argument in an appeal of a contrary ruling by the trial court does not, in our view, warrant recognition of an absolute right to oral argument before an appellate court issues a peremptory writ in the first instance, where requiring oral argument would serve no practical purpose. Indeed, if the trial court's ruling were obviously correct under established law and undisputed facts, and no purpose would be served by plenary consideration of the issue, an appeal from the ruling might warrant the imposition of sanctions for pursuing a frivolous appeal. (§ 907; rule 26(a); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) Requiring oral argument in these circumstances needlessly would add to the workload of already overburdened appellate courts.[19] If they were compelled first to calendar the matter and hear oral argument, these courts might be disinclined to intervene to correct even the clearest and most obvious error by extraordinary writ, and instead might relegate the aggrieved party to a remedy on appeal. The result would be unnecessary delay and increased litigation costs.

We conclude that the right to an opportunity for oral argument on appeal does not extend to proceedings in which an appellate court is authorized to

---

[18]It is settled that the court may summarily *deny* a writ petition without holding a hearing or permitting oral argument. (*People v. Medina, supra,* 6 Cal.3d at p. 490; *Funeral Dir. Assn. v. Bd. of Funeral Dirs.* (1943) 22 Cal.2d 104, 106 [136 P.2d 785]; *Joyce G. v. Superior Court* (1995) 38 Cal.App.4th 1501, 1514-1515 [45 Cal.Rptr.2d 805].) The summary denial of a petition for a prerogative writ properly is viewed as a refusal by the court to exercise original jurisdiction over the matter. (*Kowis, supra,* 3 Cal.4th at p. 897; *Funeral Dir. Assn. v. Bd. of Funeral Dirs., supra,* 22 Cal.2d at p. 110.) Thus, any statutory or constitutional requirement that argument on the case be heard does not apply when the court, by issuing an order summarily denying the petition, declines to exercise jurisdiction over the case and to render a decision. (Cf. *Countrywide Home Loans, Inc. v. Superior Court* (1997) 54 Cal.App.4th 828, 831-833 [62 Cal.Rptr.2d 899] [no oral argument is required before the Court of Appeal discharges an alternative writ as improvidently granted].)

[19]In fiscal year 1996-1997, the Courts of Appeal required an average of approximately six months to dispose of a pending appeal after it was fully briefed. (Judicial Council of Cal., 1 Court Statistics Rep. (1998) p. 15.)

issue a peremptory writ in the first instance, and that the California Constitution independently does not confer such a right.

We emphasize, however, as we have in previous decisions, that the accelerated *Palma* procedure is reserved for truly exceptional cases—primarily those in which a compelling temporal urgency requires an immediate decision. Denying plenary consideration where the petitioner's entitlement to relief is "obvious" and "entirely clear" under "well-settled principles of law and undisputed facts" (*Ng, supra,* 4 Cal.4th at p. 35), is permitted only in extremely narrow circumstances. Application of established law to undisputed facts must leave no room for doubt regarding the proper result. "Well-settled principles of law" must be set forth in controlling authority that squarely applies to the circumstances of the case before the court. If the respondent or real party in interest presents any reasonable argument that the applicable law is unsettled or does not govern the precise issue presented in light of the particular undisputed facts, or if the application of legal principles set forth in various sources of law might lead to different results, and there is no compelling need for an expedited decision, the court must follow the usual writ procedure and issue an alternative writ or order to show cause.

Denying an opportunity for oral argument before the issuance of a peremptory writ of mandate or prohibition in the first instance would be unfair to the parties only if the court's use of the accelerated *Palma* procedure were unwarranted. The remedy for such unfairness is not uniformly to require oral argument before a peremptory writ is issued in the first instance, but rather to restrict the use of that procedure to the narrow category of cases described above.

### III

The other issue presented for our review is whether the Court of Appeal's opinion directing issuance of the peremptory writ satisfies the requirements of article VI, section 14 of the California Constitution, which states in pertinent part: "Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated." In deciding this issue, we express no view regarding the *merits* of the Court of Appeal's decision.

As we noted in *Amwest Surety Ins. Co.* v. *Wilson* (1995) 11 Cal.4th 1243, 1266 [48 Cal.Rptr.2d 12, 906 P.2d 1112], the written-decision requirement first appeared in article VI, section 2 of the California Constitution of 1879, which stated in part: "In the determination of causes, all decisions of the court . . . shall be given in writing, and the grounds of the decision shall be stated." The debate on this provision at the constitutional convention centered upon whether this court had the resources and the time to write

opinions in every case. In this regard, one delegate remarked: "[W]hen we require them to state the reasons for a decision, we do not mean they shall write a hundred pages of detail. : . . . To give us the reason for it does not take three lines. I maintain that there is hardly a single case, many points as may be made, that cannot be cleared up, and reasons given in five pages. Many of the decisions now in the reports contain thirty pages. Let them write short opinions in all cases, and I contend that it will not be difficult for them to write up all the decisions of the Court." (3 Debates & Proceedings, Cal. Const. Convention 1878-1879, pp. 1455-1456.)

These remarks are consistent with an observation this court made 20 years earlier: "An opinion is not a controversial tract, much less a brief in reply to the counsel against whose views we decide. It is merely a statement of conclusions, and of the principal reasons which have led us to them." (*Holmes* v. *Rogers* (1859) 13 Cal. 191, 202.) ■ Our most recent interpretation of article VI, section 14 of the California Constitution conforms with these observations. In *Amwest Surety Ins. Co.* v. *Wilson, supra,* 11 Cal.4th at pages 1266-1267, we held that an opinion sufficiently states "reasons" if it sets forth the "grounds" or "principles" upon which the justices concur in the judgment. As one Court of Appeal aptly observed, this requirement is not subject to measurement by objective criteria, because what constitutes an adequate statement of reasons necessarily is a subjective determination. (*People* v. *Rojas* (1981) 118 Cal.App.3d 278, 288 [173 Cal.Rptr. 64].) "The author of an opinion . . . must follow his [or her] own judgment as to the degree of elaboration to be accorded to the treatment of any proposition and as to the questions which are worthy of notice at all." (*People* v. *Burke* (1912) 18 Cal.App. 72, 79 [122 P. 435].)

■ The Court of Appeal's decision in the present case includes three paragraphs analyzing Lewis's argument that the action is barred by the recreational use immunity set forth in Civil Code section 846. The opinion first notes that this statutory immunity is an exception to the general rule that private landowners owe a duty of care to any person coming upon the land, and that the issue whether someone has entered property for a recreational purpose generally is a question of fact. (Citing *Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095, 1098, 1102 [17 Cal.Rptr.2d 594, 847 P.2d 560]; *Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1027 [157 Cal.Rptr. 612], disapproved on other grounds in *Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707 [190 Cal.Rptr. 494, 660 P.2d 1168].) The decision then concludes the record establishes that Green's only purpose in riding his horse on the day of the accident was for recreation. Finally, it rejects the argument that the recreational nature of the ride terminated when Green entered Lewis's property for the purpose of returning home. The Greens admit that the Court of Appeal is not required to

address every issue raised by counsel (*People* v. *Rojas, supra,* 118 Cal.App.3d at p. 290), but they argue that the opinion in this case fails to set forth sufficient reasons to allow the superior court and the litigants to understand why the summary judgment order was incorrect. According to the Greens, the opinion should discuss whether it (the opinion) is "consistent with or departing from established precedent" and include a statement of reasons "no less informative than the statement of reasons required by a trial court" under section 437c, subdivision (g).[20] They assert that the Court of Appeal's opinion falls short of this standard because it does not cite or discuss other Court of Appeal decisions considered dispositive by the Greens and the trial court, does not discuss and analyze several facts, including the prior use of Lewis's property for access to their home and Green's subjective intent to return home when he entered the property, and does not include citations to the record where relevant evidence may be found. According to the Greens, the Court of Appeal's opinion amounts to a summary disposition of the petition for writ of mandate.

We disagree. As explained above, an opinion is not a brief in reply to counsel's arguments. (*Holmes* v. *Rogers, supra,* 13 Cal. at p. 202.) In order to state the reasons, grounds, or principles upon which a decision is based, the court need not discuss every case or fact raised by counsel in support of the parties' positions.[21] The appellate court does not share the trial court's obligation under section 437c, subdivision (g), to specify facts and cite evidence offered in support of and in opposition to a summary judgment motion.

Arguments similar to those advanced by the Greens were rejected long ago. In *Burgesser* v. *Bullock's* (1923) 190 Cal. 673 [214 P. 649], the defendants sought rehearing, arguing among other things that we had a duty at least to mention and repudiate two Court of Appeal decisions they viewed as supporting their position. We concluded that an appellate court has no

---

[20]Section 437c, subdivision (g), states: "Upon the denial of a motion for summary judgment, on the ground that there is a triable issue as to one or more material facts, the court shall, by written or oral order, specify one or more material facts raised by the motion as to which the court has determined there exists a triable controversy. This determination shall specifically refer to the evidence proffered in support of and in opposition to the motion which indicates that a triable controversy exists. Upon the grant of a motion for summary judgment, on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists. The court shall also state its reasons for any other determination. The court shall record its determination by court reporter or written order."

[21]See, e.g., *People* v. *Mendoza Tello* (1997) 15 Cal.4th 264, 266-268 [62 Cal.Rptr.2d 437, 933 P.2d 1134], in which our opinion comprises approximately two pages in the Official Reports.

obligation to interpret and distinguish Court of Appeal decisions simply because a party contends they set forth rules contrary to those adopted by this court. (*Id.* at p. 682.) Similarly, even if a thorough discussion of case law might be considered preferable, a Court of Appeal has no *constitutional* obligation to discuss or distinguish decisions of other Courts of Appeal simply because a party deems them to be controlling or contrary to the result reached by the court. The constitutional requirement is satisfied as long as the opinion sets forth those reasons upon which the decision is based; that requirement does not compel the court to discuss all its reasons for rejecting the various arguments of counsel. (See also *People* v. *Groves* (1935) 9 Cal.App.2d 317, 323 [An opinion need not set forth the instructions and recite evidence offered in support of the defense theory, because "a correct decision with a short, clear statement of the reasons for the decision as contemplated by the Constitution is all that should be expected."]; *Tice* v. *Pacific Electric Railway Co.* (1939) 36 Cal.App.2d 66, 76-77 [rejecting similar request to recite instructions in an opinion].)

Applying these standards to the Court of Appeal's opinion in this case, we find that it satisfies the constitutional requirement that decisions determining causes shall be in writing with reasons stated. The opinion describes the general nature of the recreational use immunity, concludes the record establishes that the immunity applies because Green's purpose in riding his horse was for recreation, and rejects the argument that the recreational nature of the ride ended when Green entered Lewis's property. These are adequate statements of the principal reasons for the Court of Appeal's decision. The Greens disagree with the court's conclusions and contend that the opinion omits discussion of law and facts supporting their position, but they cannot dispute legitimately that the Court of Appeal has stated the reasons for its decision.

## IV

The judgment of the Court of Appeal is affirmed.

Mosk, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**BAXTER, J.**—I concur. I write separately only to emphasize that section 1088 of the Code of Civil Procedure[1] has authorized the issuance of peremptory writs in the first instance since 1872, prior to the adoption of the present California Constitution. Such writs issue not only to lower courts, but also to a "corporation, board, or person, to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or

---

[1]All statutory references herein are to the Code of Civil Procedure.

station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled . . . ." (§ 1085.) The writ may be issued by a superior court as well as an appellate court (*ibid.*) each of which has original jurisdiction over petitions for extraordinary writs of mandamus. (Cal. Const., art. VI, § 10.)

No distinction is made between issuance of a peremptory writ in the first instance by a superior court, or issuance of the writ to a nonjudicial respondent. The legislative authorization for issuance of a peremptory writ in the first instance reflects recognition that, on occasion, immediate judicial action is necessary to prevent or correct unauthorized or erroneous action by the respondent or to compel the respondent to act when required to do so. That respondent may be an elections official, a corporate officer, or a local sheriff who is refusing to perform a legally required act as to which there is great urgency.

Nothing in the debates in the constitutional convention preceding the adoption of the 1879 Constitution suggests that the drafters intended that any provision of article VI have any impact on the statutory authorization for, and practice of, appellate issuance of peremptory writs in the first instance without the delay necessitated by oral argument.

**KENNARD, J., Dissenting.**—The majority holds that when a Court of Appeal grants a petition for a peremptory writ of mandate finally terminating a lawsuit, it may do so without giving the parties an opportunity for oral argument. I disagree.

Both the Code of Civil Procedure and our state Constitution guarantee a right to oral argument. Code of Civil Procedure section 1088 states that before a court may grant a mandate petition, "[t]he case must be *heard* by the court, whether the adverse party appears or not." (Italics added.) Although this provision's meaning is debatable, it is best interpreted, using normal rules of statutory construction, as recognizing a right to oral argument. Under the state Constitution, as construed by this court, there is not even room for debate. Our Constitution guarantees an opportunity for oral argument before a Court of Appeal renders a *judgment.* Because a decision granting a petition for writ of mandate is a *judgment,* a Court of Appeal may not grant a mandate petition without giving the parties a chance to argue their positions before the Court of Appeal justices who will render the decision.

The right to oral argument holds a cherished position in our legal tradition, and rightly so. As our society becomes increasingly depersonalized, it

becomes ever more important to keep those methods of procedure that personalize and humanize the administration of justice. When advocates appear in a courtroom to explain their positions to the judge or judges who decide their case, the judicial process loses its arid, abstruse, and remote character. A lively interchange between counsel and the bench, not possible by the submission of written briefs, may lead a judge to rethink his or her position and even alter the outcome of the proceeding. As Justice Harlan of the United States Supreme Court has put it, there is "no substitute" for this "Socratic method of procedure in getting at the real heart of an issue and in finding out where the truth lies." (Harlan, *What Part Does the Oral Argument Play in the Conduct of an Appeal?* (1955) 41 Cornell L.Q. 6, 7.)

## I. Facts and Proceedings

Plaintiff Chester Green suffered serious injuries when the horse he was riding stumbled and plaintiff was thrown to the ground. The accident occurred on a deeply rutted dirt road that crossed land owned by defendant James T. Lewis.

Plaintiffs Chester and Robin Green sued Lewis, alleging that the dangerous condition of the road on Lewis's land caused Chester Green's injuries. Plaintiffs sought damages for personal injury (Chester) and loss of consortium (Robin). In his answer to the complaint, Lewis claimed the protection of Civil Code section 846, which states that, with certain exceptions, an owner of property "owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose"; it defines "recreational purpose" as including "animal riding."

Lewis moved for summary judgment, arguing that the immunity granted by Civil Code section 846 barred plaintiffs' action. The trial court denied the motion, explaining in its statement of reasons that, because Lewis's road provided the only access to plaintiffs' property, there was a triable issue concerning whether, at the time of the accident, Chester Green was using the road for a "recreational purpose" within the meaning of Civil Code section 846.

Lewis sought review in the Court of Appeal by a petition for a writ of mandate. The Court of Appeal invited plaintiffs to file a response to the petition, warning that a peremptory writ might issue "[u]nless good cause is shown." Plaintiffs filed timely opposition to the petition and requested oral argument if the Court of Appeal did not summarily deny the petition. Four days after the filing of plaintiffs' written opposition, the Court of Appeal, without benefit of oral argument, rendered a decision granting a peremptory

writ of mandate that directs the trial court to vacate its order denying the motion for summary judgment and to enter a new order granting summary judgment for defendant Lewis.

To determine whether the Court of Appeal erred in denying plaintiffs an opportunity for oral argument, and to determine whether the Court of Appeal had adequately stated the reasons for its decision, this court granted plaintiffs' petition for review.

## II. STATUTORY ANALYSIS

The Code of Civil Procedure specifies the procedural requirements that litigants and courts must satisfy before a writ of mandate may issue. Section 1088 permits a court to issue a writ of mandate "in the first instance"—that is, without issuing an alternative writ or an order to show cause—but it states that "[t]he writ cannot be granted by default" and that "[t]he case must be *heard* by the court, whether the adverse party appears or not." (Italics added.)

As the majority points out, when used in a statute or other legal context to refer to an action by a court, the term "heard"—and its cognate forms such as "hear" or "hearing"—may have different meanings. It may mean a formal session of the court in a courtroom or in chambers at which the parties are represented and are permitted to address the court, for purposes such as oral argument or the submission of evidence. Or the term may, on occasion, refer simply to a court's private consideration of the merits of a motion or a case. (Maj. opn., *ante*, at p. 1247.)

For a number of reasons, the term "heard" in Code of Civil Procedure section 1088 is better understood as requiring a formal court session at which the parties are afforded the opportunity for oral argument. For one thing, this is the more usual meaning of the term when applied in a legal context to describe a court's action in relation to a motion or a lawsuit. To say that a particular judge "heard" a case most often means that the judge was physically present in a courtroom at a formally convened session of court at which the judge listened to and observed the parties or their legal representatives as they presented argument or evidence, or both, in support of their respective positions.

An examination of the term "heard" in the context of Code of Civil Procedure section 1088 confirms this interpretation. Section 1088 provides that a court may not grant a writ of mandate "by default," after which this sentence appears: "The case must be heard by the court, whether the adverse

party appears or not." To grant a writ of mandate, therefore, a default—meaning the failure of the respondent or real party in interest to file a pleading in response to the petition—is insufficient and a hearing is essential. That the required hearing is a court session, and not merely a private consideration of the merits of the petition, is shown by the qualifying phrase, "whether the adverse party appears or not." Logically and grammatically, the appearance to which this phrase refers must be an appearance *at the hearing*. Thus, the hearing must be one at which it is possible for parties to appear. A duly convened session of court is such a hearing; a court's private consideration of a petition's merits is not.

This interpretation is further confirmed by examining other sections of the Code of Civil Procedure relating to the procedure for issuing writs of mandate. It is an established rule of judicial construction that when a term appears in different parts of the same act, or in related sections of the same code, the term should be construed as having the same meaning in each instance. (*Department of Revenue of Ore.* v. *ACF Industries, Inc.* (1994) 510 U.S. 332, 342 [114 S.Ct. 843, 849, 127 L.Ed.2d 165]; *Stillwell* v. *State Bar* (1946) 29 Cal.2d 119, 123 [173 P.2d 313]; *Gruschka* v. *Unemployment Ins. Appeals Bd.* (1985) 169 Cal.App.3d 789, 792 [215 Cal.Rptr. 484].) In the chapter of the Code of Civil Procedure dealing with writs of mandate, the term "heard" or one of its cognate forms appears not only in section 1088, but also in sections 1094 and 1094.5. The meaning of the term in these sections is properly considered in determining its meaning in section 1088.

Code of Civil Procedure section 1094 states that "[i]f no return be made, the case may be *heard* on the papers of the applicant." Viewed in isolation, this provision is not helpful, as the term "heard" could have either of the two meanings mentioned above. But the section goes on to provide that "[i]f the return raises only questions of law, or puts in issue immaterial statements, not affecting the substantial rights of the parties, the court must proceed *to hear or fix a day for hearing the argument of the case.*" (Italics added.) There can be no doubt that as used in this provision, the term "hear" means a court session at which the parties, through counsel, are given a chance to argue their positions orally.

Subdivision (a) of Code of Civil Procedure section 1094.5 states: "Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of *a proceeding in which by law a hearing is required to be given*, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, the case shall be *heard* by the court sitting without a jury." (Italics added.) This provision has been interpreted as

referring to administrative proceedings in which an agency or board is required not merely to privately consider and decide the merits of a certain matter, but to hold a session at which interested parties have a *right to appear* and to submit at least argument. (*Keeler* v. *Superior Court* (1956) 46 Cal.2d 596, 599 [297 P.2d 967]; see also *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 74, fn. 3 [118 Cal.Rptr. 34, 529 P.2d 66]; *Los Angeles County Employees' Assn.* v. *Sanitation Dist. No. 2* (1979) 89 Cal.App.3d 294, 298-299 [152 Cal.Rptr. 415].) If the phrase used in section 1094.5—"a hearing is required to be given"—embraces a party's right to appear and argue, then the similar phrase in the interrelated Code of Civil Procedure section 1088—"[t]he case must be heard by the court"—ought to be construed as conferring the same right to appear and argue.

This interpretation is consistent with the understanding of our appellate courts as conveyed in published decisions. This court has long recognized that if a petition for a writ of mandate fails to state a prima facie case, a court may *deny* it "out of hand"—that is, without a hearing. (*Dare* v. *Bd. of Medical Examiners* (1943) 21 Cal.2d 790, 797 [136 P.2d 304].) But, at least when this court has focused its attention on the relevant statutory provisions,[1] we have generally declined to recognize a judicial power to *grant* a peremptory writ of mandate without affording at least the opportunity for oral argument.

In an early case, this court quoted the relevant provisions of Code of Civil Procedure sections 1088 and 1094, construing them as permitting "a hearing and a submission of the cause on the pleadings of the parties in a proceeding for mandamus as in any other," and it concluded that the hearing requirement had been satisfied in that case because "the judgment recited that the 'cause came on regularly for hearing on the twenty-first day of May, 1894,'" even though the responding party had failed to appear at the hearing. (*Town of Hayward* v. *Pimental* (1895) 107 Cal. 386, 390 [40 P. 545].) Thus, the hearing was sufficient to satisfy the statutory hearing requirement because it had afforded the parties an opportunity to appear and to argue orally, whether or not they availed themselves of the opportunity. (See also *Lotus Car Ltd.* v. *Municipal Court* (1968) 263 Cal.App.2d 264, 267 [69 Cal.Rptr. 384] [stating that in a mandate proceeding "the court may hear the matter upon the papers filed *and the argument* when only a question of law is

---

[1]An opinion I authored for the court has a statement that the statutory provisions governing petitions for writs of mandate give Courts of Appeal three options, one of which is to "grant a peremptory writ in the first instance *without a hearing* . . . ." (*Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1024 [269 Cal.Rptr. 720, 791 P.2d 290], italics added.) After further examination of the issue, I regretfully conclude that this statement, which addressed an issue not raised and which was unnecessary to the court's holding, was simply wrong.

raised" (italics added)]; *Lassen* v. *City of Alameda* (1957) 150 Cal.App.2d 44, 47-48 [309 P.2d 520] [same].)

For all of these reasons—the term "heard" usually embraces a right to oral argument; the qualifying phrase "whether the party appears or not" implies a formal court session; and in related provisions the words "hear" and "hearing" include a right to oral argument—Code of Civil Procedure section 1088 is best understood as requiring a court, including a Court of Appeal, to hold a hearing that includes an opportunity for oral argument before rendering a decision to issue a peremptory writ of mandate.

## III. CONSTITUTIONAL ANALYSIS

The California Constitution provides that in a Court of Appeal, "[c]oncurrence of 2 judges *present at the argument* is necessary for a judgment." (Cal. Const., art. VI, § 3, italics added.) This court has twice authoritatively construed this constitutional provision as conferring a right to oral argument.

The first decision involved a criminal prosecution in which, on the defendant's appeal from a superior court judgment of conviction, the Court of Appeal had summarily affirmed the judgment without giving the defendant an opportunity for oral argument. (*People* v. *Brigham* (1979) 25 Cal.3d 283, 285 [157 Cal.Rptr. 905, 599 P.2d 100] (*Brigham*).) This court determined that the Court of Appeal had acted outside its authority by proceeding in this manner. (*Id.* at p. 289.) In particular, this court declared in no uncertain terms that "[t]he Constitution of the State of California recognizes a right to oral argument on appeal," and this court identified the source of this constitutional right as the language of article VI, section 3, providing that "[c]oncurrence of 2 judges present at the argument is necessary for a judgment" in the Court of Appeal. (25 Cal.3d at p. 287.) As construed by this court, this constitutional provision guarantees the *opportunity* for oral argument; the parties may, of course, waive argument and submit the matter on the briefs, or they may stipulate to the participation of a justice not present at the argument. (*Id.* at p. 288; accord, Ops. Cal. Legis. Counsel, No. 4364 (Apr. 11, 1966) Revision of Article VI, Cal. Const.: District Court of Appeal, Sen. J. (1966 1st Ex. Sess.) pp. 1048-1050.)

The second decision involved a civil action in which, on the plaintiff's appeal from a superior court judgment denying a petition for a writ of mandate, the Court of Appeal altered the composition of the panel assigned to the appeal after oral argument to include a justice not present at the argument. (*Moles* v. *Regents of University of California* (1982) 32 Cal.3d 867, 869 [187 Cal.Rptr. 557, 654 P.2d 740] (*Moles*).) Finding this procedure

in violation of the state Constitution, this court retransferred the matter to the Court of Appeal "for reargument and decision by a properly constituted panel." (*Id.* at p. 874.) Unless the parties stipulate to the participation of a justice not present at oral argument, or waive argument entirely, " 'a judge not present at the argument is barred from participating in the decision.' " (*Id.* at p. 870, quoting 6 Witkin, Cal. Procedure (2d ed. 1972) Appeal, § 490, p. 4442.) This court affirmed that our state Constitution recognizes "the right to oral argument in civil—as well as criminal—cases . . . ." (32 Cal.3d at p. 872.)

Although both of these prior decisions of this court concerned judgments that a Court of Appeal rendered on appeal, whereas here the Court of Appeal rendered its judgment in an original proceeding for a writ of mandate, the language of the relevant constitutional provision applies alike to all *judgments* rendered by the Court of Appeal, and it admits of no distinction based on whether the judgment is rendered on appeal or in an original mandate proceeding. The majority concedes, as it must, that a decision of the Court of Appeal granting a peremptory writ of mandate in the first instance is a judgment of the Court of Appeal. (Maj. opn., *ante*, at p. 1256.)

To summarize, the Constitution provides that the "[c]oncurrence of 2 judges present at the argument is necessary for a judgment." (Cal. Const., art. VI, § 3.) A decision of the Court of Appeal directing issuance of a peremptory writ of mandate in the first instance is a judgment of the Court of Appeal, the same as a decision of the Court of Appeal affirming or reversing a superior court judgment on direct appeal. If article VI, section 3, guarantees a right of oral argument in the one situation (direct appeal), it must equally guarantee a right of oral argument in the other situation (peremptory writ in the first instance). After careful consideration of the matter, this court has twice decided that article VI, section 3, does guarantee a right of oral argument in all appeals decided by the Court of Appeal. Therefore, necessarily, article VI, section 3, guarantees a right of oral argument when a Court of Appeal issues a peremptory writ in the first instance. The logic is ironclad. There is no sound basis upon which our prior decisions may be distinguished.

## IV. OTHER CONSIDERATIONS

The majority's decision produces anomalous results.

A superior court must give the parties an opportunity for oral argument before granting a motion for summary judgment. (*Mediterranean Construction Co.* v. *State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257,

262-264 [77 Cal.Rptr.2d 781].) Yet the majority's decision means that the Court of Appeal may direct entry of summary judgment, by issuing a peremptory writ of mandate in the first instance, without giving the parties a chance to orally argue their positions. If oral argument is essential for a trial court to rule on a motion for summary judgment, why is it not also essential before a Court of Appeal directs a trial court to enter summary judgment? The majority provides no satisfactory answer.

If the superior court *grants* summary judgment for one party and the other *appeals*, the Court of Appeal may not affirm the superior court's judgment without granting the losing party an opportunity for oral argument. Yet, if the trial court has *denied* summary judgment, and the unsuccessful moving party seeks review by petition for a writ of mandate, the majority would permit a Court of Appeal, without giving the opposing party an opportunity for oral argument, to direct the superior court to vacate the order denying summary judgment and to enter a new order granting judgment. Thus, the party who loses in the superior court is guaranteed a right to oral argument in the Court of Appeal, but the party who wins is not. Why should the right to oral argument turn on whether a party won or lost in the superior court, and why should the right be given to a party who lost in the superior court but denied to a party who won in that court? The majority provides no satisfactory answer.

I see no reasonable basis for distinguishing these situations. The right to oral argument should not depend on whether the summary judgment is finally adjudicated on the merits in the superior court or in the Court of Appeal, nor should the right to orally argue in the Court of Appeal be granted to one who lost in the superior court but denied to one who prevailed in that court. In logic and fairness, the right to oral argument should be equally available in all of these situations.

There is another reason for preferring a rule that recognizes a right to oral argument when a Court of Appeal issues a peremptory writ of mandate in the first instance. This rule would be consistent with this court's decisions on two related issues—when a Court of Appeal decision must be in writing with reasons stated and when a Court of Appeal decision establishes the law of the case.

This court has held that a decision of the Court of Appeal summarily denying a petition for a writ of mandate does not establish the law of the case, but that a Court of Appeal decision granting a petition for writ does establish the law of the case, irrespective of whether the peremptory writ is granted in the first instance or only after issuance of an alternative writ or an

order to show cause. (*Kowis* v. *Howard* (1992) 3 Cal.4th 888, 894-895, 899 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

The rule for written opinions is the same. The California Constitution states that "[d]ecisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated." (Cal. Const., art. VI, § 14.) When a Court of Appeal summarily denies a petition for a writ of mandate, it does not determine a cause, and therefore it need not explain the ruling in a written opinion. (*People* v. *Medina* (1972) 6 Cal.3d 484, 490 [99 Cal.Rptr. 630, 492 P.2d 686].) But when a Court of Appeal decides to issue a peremptory writ of mandate in the first instance, as the Court of Appeal did here, it does determine a cause and so must give an explanation in a written opinion.[2] (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178, fn. 6 [203 Cal.Rptr. 626, 681 P.2d 893].)

If a Court of Appeal decision is significant enough to establish the law of the case and to require explanation by a written opinion, it should be rendered only after the Court of Appeal has given the parties an opportunity for oral argument. Having separate rules for determining law of the case, written decision, and oral argument is unnecessarily confusing. A single test should govern all three.

Last but not least, recognizing a right to oral argument when a Court of Appeal issues a peremptory writ of mandate in the first instance acknowledges and reaffirms the worth of oral argument in the appellate process. Oral argument in the Courts of Appeal promotes confidence in those courts' decisions, on the part of the litigants, counsel, and the public, by ensuring that the justices whose decisions will bind the litigants have indeed heard and considered, and perhaps debated, the merits of the litigants' argument. The tremendous growth in the caseload of the Courts of Appeal, and their increasing use of professional legal staff, may give litigants cause to doubt that justices personally read all the briefs the litigants submit and personally write all the opinions the court issues. But oral argument removes all intermediaries and gives counsel an opportunity to make personal contact with the justices who will decide their case and to engage them in a dialogue on the merits of their respective positions. Speaking to litigants' attorneys, Chief Justice Rehnquist explained the importance of oral argument for them in this way: " 'You could write hundreds of pages of briefs, and, you are still

---

[2] Here, plaintiffs contend that the Court of Appeal's written explanation for its decision failed to satisfy the written opinion requirement because the court's reasoning was not explained in sufficient detail. The majority agrees with plaintiffs that the Court of Appeal's decision was one of those that the Constitution requires to be in writing with reasons stated, but the majority concludes also that the Court of Appeal complied with this requirement. (Maj. opn., *ante*, at pp. 1261-1264.) I do not disagree with these conclusions.

never absolutely sure that the judge is focused on exactly what you want him to focus on in that brief. Right there at the time of oral argument you know that you do have an opportunity to engage or get into the judge's mental process.' " (Bright, *The Power of the Spoken Word: In Defense of Oral Argument* (1986) 72 Iowa L.Rev. 35, 36-37.) However brief, this direct personal interaction between court and counsel deserves to be preserved and protected.

Only three points in the majority's tedious analysis require comment.

The majority asserts that this court's construction of the state Constitution in *Moles*, *supra*, 32 Cal.3d 867, and *Brigham*, *supra*, 25 Cal.3d 283, may be tossed aside here because "[o]ur holdings in those decisions also depended upon statutes and rules referring to oral argument on appeal." (Maj. opn., *ante*, at p. 1257.) I do not agree that the reasoning of those decisions may be dismissed so easily. In both *Moles* and *Brigham*, this court stated unequivocally that the state Constitution, by requiring that the "[c]oncurrence of 2 judges *present at the argument* is necessary for a judgment" (Cal. Const., art. VI, § 3, italics added), gives litigants a right to oral argument in the Court of Appeal. This court's additional reliance on statutes and rules of court does not lessen the precedential force of the constitutional interpretation because "[i]t is well settled that where two independent reasons are given for a decision, neither one is to be considered mere *dictum*, since there is no more reason for calling one ground the real basis of the decision than the other." (*Bank of Italy etc. Assn.* v. *Bentley* (1933) 217 Cal. 644, 650 [20 P.2d 940]; accord, *Southern Cal. Ch. of Associated Builders etc. Com.* v. *California Apprenticeship Council* (1992) 4 Cal.4th 422, 431, fn. 3 [14 Cal.Rptr.2d 491, 841 P.2d 1011].)

The majority argues that "if an unusual urgency requires acceleration of the normal process, the writ petition might become moot before the court could schedule and hear oral argument, thereby depriving the court of jurisdiction where a stay or writ of supersedeas could not preserve the status quo." (Maj. opn., *ante*, at p. 1259.) Situations in which the status quo may not be preserved by a stay or a writ of supersedeas are exceedingly rare, and in those rare situations I am confident that modern technology, particularly telephone and computer communications, will allow the Court of Appeal to give the parties an opportunity for oral argument before the matter is mooted by the passage of time.

The majority maintains that requiring Courts of Appeal to give litigants an opportunity for oral argument before granting a peremptory writ in the first instance "needlessly would add to the workload of already overburdened

appellate courts," and that, to escape the crushing burden of oral argument in these cases, Courts of Appeal would decline "to correct even the clearest and most obvious error by extraordinary writ, and instead might relegate the aggrieved party to a remedy on appeal" thereby causing "unnecessary delay and increased litigation costs." (Maj. opn., *ante*, at p. 1260.) But what is this crushing burden of which the majority writes? As this court has emphasized, Courts of Appeal should grant writs of mandate in the first instance only rarely. When the right to relief is truly obvious, parties may well waive oral argument, knowing their cause is hopeless. And even when the parties assert their right to oral argument, a hearing takes at most a single hour of the court's time. Before issuing a writ of mandate, a Court of Appeal court must in any event devote several hours to reviewing the petition and the informal opposition, if any, and to drafting an opinion setting forth the reasons for the court's decision. The additional time required for oral argument is relatively modest, and I am confident, as the majority apparently is not, that Court of Appeal justices are too conscientious to allow this modest additional burden to dissuade them from rendering a decision that would save the trial court and the litigants the much greater expenditure of time and resources required for holding a needless trial and perhaps also a subsequent appeal. Finally, concerns of judicial efficiency carry little force when weighed against fairness to the litigants and obedience to constitutional commands.

## V. CONCLUSION

As Second Circuit Judge Irving R. Kaufman has written: "An oral argument is as different from a brief as a love song is from a novel. It is an opportunity to go straight to the heart!" (Kaufman, *Appellate Advocacy in the Federal Courts* (1977) 79 F.R.D. 165, 171; see *Mediterranean Construction Co.* v. *State Farm Fire & Casualty Co., supra,* 66 Cal.App.4th 257, 264.) Our statutory law recognizes the importance of oral argument by requiring that before a court may grant a peremptory writ of mandate, "[t]he case must be heard." (Code Civ. Proc., § 1088.) Our Constitution recognizes the importance of oral argument by specifying that the "[c]oncurrence of 2 judges present at the argument is necessary for a judgment" in a Court of Appeal. (Cal. Const., art. VI, § 3.) In obedience to the command of these laws, I would reverse the judgment of the Court of Appeal because it granted a peremptory writ of mandate in the first instance without giving the parties an opportunity for oral argument.

**BROWN, J.,** Dissenting.—This is a simple case. Or at least it ought to be.

The majority freely acknowledges that in *People* v. *Brigham* (1979) 25 Cal.3d 283 [157 Cal.Rptr. 905, 599 P.2d 100] (*Brigham*) we held, and in

*Moles* v. *Regents of University of California* (1982) 32 Cal.3d 867 [187 Cal.Rptr. 557, 654 P.2d 740] (*Moles*) we reiterated that article VI, sections 2 and 3 of the California Constitution implicitly recognize the right to oral argument before rendition of a judgment.[1] (Maj. opn., *ante*, at pp. 1253, 1254-1255.) The majority also acknowledges that "a decision to issue a peremptory writ in the first instance constitutes a judgment, and article VI, sections 2 and 3, apply to such proceedings." (Maj. opn., *ante*, at p. 1256.) QED. The right to oral argument under article VI, sections 2 and 3 extends to the issuance of a peremptory writ in the first instance.

In reaching a contrary conclusion, the majority observes that "[t]he circumstance that neither *Moles* nor *Brigham* relied solely upon these constitutional provisions in holding that there is a right to oral argument on appeal . . . suggests the provisions independently do not confer such a right." (Maj. opn., *ante*, at p. 1257.) With all due respect, I cannot follow the majority's tortured reasoning. The fact that *Brigham* and *Moles* cited sources other than article VI, sections 2 and 3 of the California Constitution does not alter the fact that both cases relied on these constitutional provisions as well. (See *Moles, supra*, 32 Cal.3d at p. 872 [The provisions embody "the longstanding recognition in prior case law of the right of *all* litigants before the Supreme Court [and the Courts of Appeal] to argue their cases orally." (Original italics.)].) Indeed, the very reason Justice Newman dissented in *Brigham* was that he disagreed with the majority's *constitutional* analysis. (See *Brigham, supra*, 25 Cal.3d at p. 316 (dis. opn. of Newman, J.).) The majority's novel approach will enable courts to dispense with just about every constitutional precedent they later deem "inconvenient" so long as that precedent did not rest "solely" on constitutional grounds.

Instead of following *Brigham* and *Moles*, the majority resorts to "decisions of this court [that] have observed that oral argument is unnecessary if a court decides to issue the peremptory writ without first issuing an alternative writ or order to show cause." (Maj. opn., *ante*, at p. 1258.) Apparently, the majority has in mind *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893] (*Palma*) and *Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012 [269 Cal.Rptr. 720, 791 P.2d 290] (*Bay Development*), which are addressed earlier in its opinion. (See maj. opn., *ante*, at pp. 1241-1243.) The majority's reliance on *Palma* and *Bay Development* is mystifying. Unlike *Brigham* and *Moles*, which squarely addressed the oral argument issue, neither *Palma* nor *Bay Development*

---

[1]Article VI, section 2 of the California Constitution, which governs this court, provides that "[c]oncurrence of 4 judges present at the argument is necessary for a judgment." Similarly, article VI, section 3, which governs the Courts of Appeal, provides that "[c]oncurrence of 2 judges present at the argument is necessary for a judgment."

presented the issue, and, hence, this court's observations were, of necessity, dicta. (See maj. opn., *ante*, at p. 1241 ["Our decision in *Palma* did not analyze the legal basis for the statement that there is no need to await oral argument when a peremptory writ is issued in the first instance, and we had no occasion in that case actually to decide whether an appellate court may deny the parties an opportunity to present oral argument before the court issues a peremptory writ of mandate or prohibition in the first instance."]; *id.* at pp. 1242-1243 ["Although the foregoing discussion in *Bay Development* suggests that a Court of Appeal hears oral argument on petitions for a writ of mandate only after issuing an alternative writ or order to show cause, we had no reason in *Bay Development* to decide whether the parties must be afforded an opportunity for oral argument before an appellate court issues a peremptory writ in the first instance."]; *id.* at p. 1243 ["Our subsequent decisions have not suggested that the foregoing dicta in *Palma* and *Bay Development* regarding oral argument were dispositive of the issue."].)

If, as both *Brigham* and *Moles* hold, article VI, sections 2 and 3 of the California Constitution afford a right to oral argument, there is no conceivable basis on which to carve out an exception for peremptory writs in the first instance. To the contrary, both constitutional provisions refer simply to "a judgment." (See *ante*, fn. 1.) As the majority concedes, a judgment is a judgment, however it is rendered. (See maj. opn., *ante*, at p. 1256 [peremptory writ in the first instance is a judgment within the meaning of article VI, sections 2 and 3]; see also *Kowis* v. *Howard* (1992) 3 Cal.4th 888, 899 [12 Cal.Rptr.2d 728, 838 P.2d 250] [*Moles* "suggested that the right to oral argument exists in any appeal *or original proceeding* decided on the merits." (Italics added.)].)

Nor does treating judgments rendered by peremptory writs in the first instance as "second-class citizens" make sense from a policy standpoint. As real parties in interest observe, such a distinction would afford greater rights to parties who *lost* in the lower court (who would be guaranteed the right to oral argument on appeal) than to parties who *won* in the lower court (who would enjoy no such right prior to the issuance of a peremptory writ in the first instance). The majority's only response to this rather obvious problem is its comforting assurance that a "remedy for such unfairness" is available but that it "is not uniformly to require oral argument before a peremptory writ is issued in the first instance, but rather to restrict the use of that procedure to the narrow category of cases described above." (Maj. opn., *ante*, at p. 1261; see also *id.* at pp. 1240-1241, 1258-1259, 1260-1261 [describing the "narrow category of cases"].)

Unfortunately for real parties in interest, the "remedy" promised by the majority proves to be illusory, as the majority assiduously avoids any

attempt to determine whether a peremptory writ in the first instance was appropriate in this case. (See maj. opn., *ante*, at pp. 1240, 1261.) The majority's reluctance to tackle this issue is understandable. The mere description of the facts of this case demonstrates that it does not fall within the "narrow category of cases" (*id.* at p. 1261) described by the majority. In particular, the petitioner's entitlement to relief is not " 'obvious' and 'entirely clear' under 'well-settled principles of law and undisputed facts.' " (*Ibid.*, quoting *Ng* v. *Superior Court* (1992) 4 Cal.4th 29, 35 [13 Cal.Rptr.2d 856, 840 P.2d 961].) The facts of this case are a far cry from the "extremely narrow circumstances" (maj. opn., *ante*, at p. 1261) in which a peremptory writ in the first instance might be appropriate.

The misuse of peremptory writs in the first instance is not an isolated problem. For example, despite our admonition in *Ng* v. *Superior Court*, *supra*, 4 Cal.4th at pages 34-35, as reiterated in *Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1222-1223 [23 Cal.Rptr.2d 397, 859 P.2d 96], a number of Courts of Appeal have continued to issue peremptory writs in the first instance in *published* opinions. (See *Jaycee B.* v. *Superior Court* (1996) 42 Cal.App.4th 718, 730-731 [49 Cal.Rptr.2d 694] ["The facts and the law are *almost*, but not quite, 'entirely clear.' This is, after all, a case of first impression coming to us at the very inception of the litigation. We must admit that the 'entirely clear' standard laid down in *Alexander* and *Ng* justifying the issuing of a peremptory writ in the first instance is not *quite* met. Nevertheless, we think the facts are close enough to justify relief outside the 'normal writ procedure.' [Citation.]" (Original italics.)]; see also *Catanese* v. *Superior Court* (1996) 46 Cal.App.4th 1159, 1166 [54 Cal.Rptr.2d 280]; *PH II, Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 1680, 1683 [40 Cal.Rptr.2d 169]; *Regional Steel Corp.* v. *Superior Court* (1994) 25 Cal.App.4th 525, 529 [32 Cal.Rptr.2d 417].) How an opinion can resolve issues that are " 'obvious' and 'entirely clear' under 'well-settled principles of law and undisputed facts' [citation]" (maj. opn., *ante*, at p. 1261) and yet still meet the criteria for publication escapes me. (See Cal. Rules of Court, rule 976(b).)[2]

Finally, there is one point on which I agree with the majority—our appellate courts are seriously overburdened. (See maj. opn., *ante*, at p. 1260

---

[2]California Rules of Court, rule 976(b), provides as follows: "No opinion of a Court of Appeal or an appellate department of the superior court may be published in the Official Reports unless the opinion: [¶] (1) establishes a new rule of law, applies an existing rule to a set of facts significantly different from those stated in published opinions, or modifies, or criticizes with reasons given, an existing rule; [¶] (2) resolves or creates an apparent conflict in the law; [¶] (3) involves a legal issue of continuing public interest; or [¶] (4) makes a significant contribution to legal literature by reviewing either the development of a common law rule or the legislative or judicial history of a provision of a constitution, statute, or other written law."

& fn. 19.) Issues of workload, however, are not new ones. Justice Newman's dissent in *Brigham,* written nearly two decades ago, bears repeating in this regard: "I dissent because I do not believe that traditional boundaries of the right to oral argument are the same as the boundaries that the California Constitution prescribes. [¶] From part II of the 1979 Annual Report of the Judicial Council we learn that 'total filings' in the Courts of Appeal were 6,411 in 1967-1968, 13,018 in 1977-1978. In this court the parallel totals were 2,959 and 3,881. [Citation.] [¶] Do not those and related statistics suggest that in this state the work of appellate judges may be suffering because of a serious overload? Many improvements will be essential, I think. It would be unfortunate if needed experiments and reforms were blocked by archaic assumptions as to how, in fact, oral argument most efficiently helps promote justice." (*Brigham, supra,* 25 Cal.3d at p. 316 (dis. opn. of Newman, J.).)

I share many of the concerns expressed by Justice Newman. But one key fact remains—his views did not prevail. While I am not averse to reexamining the constitutional holdings in *Brigham* and *Moles,* I would do so forthrightly, not in a manner which draws an arbitrary and senseless distinction between appeals, alternative writs and orders to show cause, on the one hand, and peremptory writs in the first instance, on the other hand.

The orderly development of the law demands that we acknowledge what we are doing, when we are doing it. " 'There is enough confusion in the law. We should say what we mean and mean what we say.' " (*American Academy of Pediatrics* v. *Lungren* (1997) 16 Cal.4th 307, 428 [66 Cal.Rptr.2d 210, 940 P.2d 797] (dis. opn. of Brown, J.), quoting *Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 57 [26 Cal.Rptr.2d 834, 865 P.2d 633].) Applying this sensible principle in this case, we should either candidly reexamine *Brigham* and *Moles* or follow their holdings here. We should not pretend they do not say something they do, in fact, say.[3]

The petition of real parties in interest for a rehearing was denied March 31, 1999. Kennard, J., and Brown, J., were of the opinion that the petition should be granted.

---

[3]In light of my conclusion that the Court of Appeal erred by issuing a peremptory writ in the first instance without affording real parties in interest their right to oral argument, I have no occasion to consider whether the Court of Appeal's written opinion satisfies the requirements of article VI, section 14 of the California Constitution.